

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00059-CR

_____

MICHAEL LEE ALBERTS, SR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22305

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Concurring Opinion by Justice Carter

OPINION

The State prosecuted a consolidated trial against Michael Lee Alberts, Sr., wherein he was charged with multiple offenses involving two children, D.G. and K.R. This appeal pertains to a jury finding of guilty of two counts of indecency by contact with D.G., a child, and one count of indecency by exposure to D.G. Punishment was assessed by the jury at five years' imprisonment for each of the counts of indecency by contact with D.G., and four years' imprisonment for indecency by exposure to D.G. Alberts alleges four points on appeal: (1) his Constitutional right against being subjected to double jeopardy was violated; (2) his trial counsel rendered ineffective assistance to him in the failure to properly object to the introduction of certain harmful evidence; (3) the trial court erroneously excluded evidence favorable to Alberts during the punishment phase; and (4) the trial court exhibited bias against him during the punishment phase of the trial.

I.      **Factual and Procedural Background**

Among Alberts's twenty-three grandchildren and step-grandchildren were K.R. and D.G.[1] Alberts's extended family was described to have enjoyed large gatherings at Alberts's residence until dual allegations were lodged against Alberts by D.G., a boy, and K.G., a girl, bringing a halt to the family togetherness. The charges against Alberts regarding both children were tried in the same trial.

---

[1]The State tried Alberts for aggravated assault of K.R. and indecency with D.G. in a single trial. See our opinion in cause number 06-09-00058-CR for disposition of Alberts's points of error involving K.R.

2

D.G. testified that he and his sister, M.G., visited at Alberts's home quite often. During one such overnight stay, D.G. awoke in the morning and went into Alberts's room, asking Alberts to prepare breakfast. D.G. told the jury that Alberts "said, 'maybe later.' And then he told me to come lay down with him." Continuing, D.G. related that Alberts, "told me to take off my clothes . . . get up in his bed and lay down . . . and told me to wiggle his . . . [w]eenie." D.G. stated he complied with Alberts's request and that Alberts reciprocated, doing the same thing to him. When Alberts heard M.G. awake, he told D.G. "to hurry up and jump down and put my clothes on." D.G. complied, and Alberts made breakfast for the two children.

## II.     Alberts's Double Jeopardy Rights Were Violated

In his first point of error, Alberts contends that the trial court's conviction of indecency by contact and exposure based on a single incident involving D.G. violated Alberts's protection against double jeopardy because he was found guilty of both the "greater and lesser inclusive offense." He points out that the sentences were to run consecutively. This issue was not presented to the trial court. Although the general rule is that a defendant must raise a double jeopardy claim at the trial court level in order to preserve error for appellate review,[2] when the error is clearly apparent from the face of the record, a double jeopardy violation can be raised for the first time on appeal. *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008); *Rangel*, 179 S.W.3d at 70. Here, the alleged error is apparent on the face of the record and, thus, can be reviewed. *Rangel*, 179 S.W.3d at 70–71.

---

[2]*Rangel v. State*, 179 S.W.3d 64, 70 (Tex. App.—San Antonio 2005, pet. ref'd).

Our founding fathers recognized that allowing States to subject citizens to multiple trials for the same offense "would arm Government with a potent weapon of oppression." *Stephens v. State*, 806 S.W.2d 812, 816 (Tex. Crim. App. 1990) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977)). Both the Fifth Amendment to the United States Constitution and Article I, Section 14 of the Texas Constitution prohibit double jeopardy and thereby protect individuals from being tried twice for the same offense, possibly receiving double punishments for the same act. *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Stephens*, 806 S.W.2d at 814–15. A multiple punishments double jeopardy claim can arise in two contexts. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). The first is in the lesser-included offense context, where the same conduct is punished twice, "once for the basic conduct, and [another] time for that same conduct plus more." *Id.* The second occurs where a defendant is punished for the same criminal act twice under two distinct statutes when the Legislature intended the conduct to be punished only once.[3] *Id.*

The State references the *Blockburger* test and argues that the counts merely require proof of different elements, specifically, that exposure requires the additional factor of the knowledge that the child is present. *Blockburger* states that if different statutory provisions require an element or "proof of a fact which the other does not," there are no double jeopardy concerns. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). However, the *Blockburger* test applies only when the same

---

[3]The State does not dispute the two convictions were the result of the same act.

act or transaction constitutes a violation of two distinct statutory provisions, and focuses on the proof necessary to prove elements of each offense. *Vitale*, 447 U.S. at 416; *Rangel*, 179 S.W.3d at 71. The test is not needed where one indictment alleges two separate counts of the same statutory offense arising out of one incident because double jeopardy concerns will necessarily exist.[4]

The Texas Code of Criminal Procedure clarifies that an

offense is a lesser included offense if:

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

> (2) if differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person . . . suffices to establish its commission.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006). "The relevant test is whether the lesser offense could be proved by the same facts necessary to establish the offense charged." *Horne v. State*, 228 S.W.3d 442, 447 (Tex. App.—Texarkana 2007, no pet.) (quoting *Pickens v. State*, 165 S.W.3d 675, 679 (Tex. Crim. App. 2005)). In conducting that review, we are to compare the elements of the two offenses without any reference to the facts or evidence in the particular case. *Id.* (citing *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007)).

---

[4]Other nonexclusive factors considered when determining whether the Legislature intended multiple punishments include whether the offenses are contained within the same statutory section, whether they are phrased in the alternative, whether they are named similarly, and whether the offenses have common punishment ranges. *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).

Because it clarifies the elements of a criminal offense, the statutory language determines whether offenses are the same for double-jeopardy purposes. *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). Thus, in Texas, when resolving this issue, we focus on the elements alleged in the charging instrument. *Bigon*, 252 S.W.3d at 370. Counts I and II of the indictment allege indecency by touching the sexual organ of D.G. and by causing D.G. to touch Alberts's sexual organ, and count III alleges indecency by exposure. A person commits indecency with a child if the person "(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or (2) with intent to arouse or gratify the sexual desire of any person: (A) exposes the person's . . . genitals, knowing the child is present; or (B) causes the child to expose the child's . . . genitals." TEX. PENAL CODE ANN. § 21.11 (Vernon Supp. 2009). Sexual contact means touching of "any part of the genitals of a child" with "intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.11(c).

Here, unless the State alleged that a separate act occurred (a circumstance which would remove our analysis outside of the double jeopardy realm), proof of the same or less than all the facts required to establish that a person committed indecency by contact would also necessarily establish indecency by exposure during the act. The State's argument that indecency by exposure requires knowledge that the child was present is rejected since that knowledge is also necessary for a person to engage in sexual contact. Indecency by exposure also differs from indecency by contact only in respect that touching, a greater injury, is not required. In essence, Alberts was punished once for the

6

basic conduct (i.e., exposure) and a second time for that same conduct, plus contact. Thus, we conclude that Alberts was subjected to multiple punishments for the same act. *Patterson v. State*, 96 S.W.3d 427, 432–33 (Tex. App.—Austin 2002), *aff'd*, 152 S.W.3d 88, 89, 92 (Tex. Crim. App. 2004), *but overruled on other grounds by Sledge v. State*, 262 S.W.3d 492 (Tex. App.—Austin 2008, pet. ref'd) (agreeing that convictions for indecency with a child by contact and indecency with a child by exposure based on same conduct that underlay two aggravated sexual assault convictions violated the double jeopardy guarantee against multiple punishments); *Gonzalez Soto v. State*, 267 S.W.3d 327, 343 (Tex. App.—Corpus Christi 2008, no pet.) ("If, however, the jury based its conviction . . . on the allegation that appellant caused A.R. to touch his genitals, the indecency by exposure offense is subsumed within the conduct for which appellant was convicted [on the indecency by contact charge], and is jeopardy-barred."); *see generally Ochoa v. State*, 982 S.W.2d 904, 907–08 (Tex. Crim. App. 1998) (analyzing double jeopardy violation where only one sexual offense was committed).

Further, absent legislative intent to the contrary, we cannot conclude that Section 21.11 of the Texas Penal Code would allow a defendant to be punished twice for the same act under Sections (a)(1) and (a)(2). It is true that a "person who commits *more than one discrete sexual assault* against the same complainant may be convicted and punished for each separate act, even if the acts were committed in close temporal proximity." *Barnes v. State*, 165 S.W.3d 75, 87–88 (Tex. App.—Austin 2005, no pet.) (emphasis added) (convictions for both aggravated sexual assault by

7

genital-to-genital contact and aggravated sexual assault by genital penetration violated double jeopardy where there was no evidence suggesting appellant touched child's genitals "except as an incident to the penetration") (quoting *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999)). As recited in *Patterson*,

> While it is clear from the plain language of the various statutes that the legislature intended harsh penalties for sexual abuse of children, there is nothing in the language to suggest that it intended to authorize "stop-action" prosecution. Just as a conviction for a completed offense bars prosecution for an attempt to commit the same offense, a conviction for an offense set out in § 3.03 bars conviction for conduct that, on the facts of the case, is demonstrably part of the commission of the greater offense. For example, indecency by genital exposure of oneself in the course of manual penetration of another are separate offenses, while penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed. Thus, indecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case.

152 S.W.3d at 92 (footnote omitted). In other words, a defendant cannot be convicted for a completed act of sexual assault and also for conduct that is demonstrably a part of the commission of the completed act. *Id.*; *Barnes*, 165 S.W.3d at 88; *Hanson v. State*, 180 S.W.3d 726, 732 (Tex. App.—Waco 2005, no pet.); *Hutchins v. State*, 992 S.W.2d 629, 632 (Tex. App.—Austin 1999, pet. ref'd, untimely filed) (holding that convictions for aggravated sexual assault and indecency by contact constituted double jeopardy where contact was not separate act but "incident" to sexual assault). In this case, Alberts's exposure was incident to the act of engaging in sexual contact.

Typically, when a defendant is convicted of multiple offenses that are the same for double jeopardy purposes, the conviction for the most serious offense should be retained and the other

offenses should be set aside. *Cavazos*, 203 S.W.3d at 337; *Rangel*, 179 S.W.3d at 71. We reverse the trial court's judgment convicting Alberts of indecency with a child by exposure.

## III. Alberts's Counsel Was Not Ineffective

Alberts next claims that his counsel was ineffective because he failed to object (1) to having allowed Peavy to testify as an outcry witness; (2) to Peavy's testimony regarding the children's truthfulness during her interview with them; (3) to D.G.'s mother's testimony regarding his truthfulness although D.G.'s character for truthfulness had not been attacked; and (4) hearsay testimony given by D.G.'s mother.

In order to be successful, Alberts's allegation that his trial counsel was ineffective must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). He bears the burden of proving ineffective assistance by a preponderance of the evidence. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Alberts received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

9

First, Alberts must show that his counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Strickland*, 466 U.S. at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

To meet the second prong of the *Strickland* test, Alberts must show that the alleged deficient performance damaged his defense to such a degree that there is a reasonable probability that the result of the trial would have been different had the deficient performance not occurred. *Strickland*, 466 U.S. at 689; *Tong*, 25 S.W.3d at 712. A reasonable probability "is [one] sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

## A. Peavy Was the Proper Outcry Witness

Testimony of an outcry witness is an exception to the hearsay rule. If a statement about alleged indecency with a child is made by a victim under fourteen years of age, "the first person, 18 years of age or older," to whom the statement was made may testify about the victim's statements at trial. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2 (Vernon Supp. 2009). When asked when he first reported the incident with Alberts, D.G. stated, "It was like one night at my aunt's. She was going to take us home, and then I had told my mom and dad." Based on this testimony, Alberts asks

10

this Court to find his counsel ineffective in counsel's failure to object to Peavy's recitation of the statements which D.G. made to her.

In pursuing this argument, Alberts omits key parts of testimony that demonstrate Peavy was the proper outcry witness. Peavy, who worked with Child Protective Services (CPS), stated that she interviewed K.R. before she interviewed D.G. Due to K.R.'s outcry against Alberts, she conducted a risk assessment interview with D.G. The following process was described by Peavy: "if I have a victim who says they have been sexually abused, if the alleged perpetrator is around other children, we'll interview those other children to find out if something has happened to any of them." D.G.'s mother testified that D.G. did not tell her about the incident until "[a]fter CPS talked to him." Based on these facts (which suggest that Peavy was the first person D.G. told of the incidents with Alberts) and absent a record revealing trial counsel's strategy or motivation in failing to make a challenge to Peavy's testimony, Alberts has failed to defeat the strong presumption that trial counsel's actions in not objecting to Peavy's testimony fell within the wide range of reasonable professional assistance.

Further, because we have already determined D.G.'s testimony was sufficient to establish indecency by contact, the substantial content of Peavy's testimony was before the jury from another source. Alberts cannot demonstrate that the alleged deficient performance in allowing Peavy's testimony as the outcry witness damaged his defense such that there was a reasonable probability the outcome of the trial would have been different had such a challenge been made. This point of error is overruled.

11

**B.    Counsel's Failure to Object to Opinions Regarding Truthfulness Did Not Undermine Confidence in the Verdict**

There is a "'fine but essential' line between helpful expert testimony and impermissible comments on credibility." *Schutz v. State*, 957 S.W.2d 52, 60 (Tex. Crim. App. 1997). Alberts complains of the following statements made during Peavy's direct examination:

> Q.    [By the State] Based on your training and experience, do all kids act the same way in an interview?
>
> A.    [By Peavy] No, they do not. They're all very, very different.
>
> Q.    If they act in one way or another, does that have anything to do -- does that lead you to believe that they're either telling the truth or lying?
>
> A.    No . . . .
>
> . . . .
>
> Q.    Whether they tell right away or they wait years and years, does that have any bearing on whether or not they're telling the truth, based on your experience?
>
> A.    Based on my experience, no.
>
> . . . .
>
> Q.    Did you feel like she understood the questions about the truth and a lie?
>
> A.    Yes.
>
> . . . .
>
> Q.    Did you feel like she understood the difference between the truth and a lie?

12

A.      Yes, she did.

. . . .

Q.      Did you ask her why she didn't tell anyone?

A.      I did.

Q.      What was her response to that?

A.      She told me a couple of things.  She said it was gross and she -- that she would rather keep her own issues to herself.  She finished that up with, I had asked her to tell the truth, and I had asked her if anyone had looked at her or touched her.  She told me the truth.

Q.      Based upon your training and experience . . . and the way the children answered your questions, do you believe that they gave valid outcries to you?

A.      Yes, based upon my experience and training.

Alberts cites to this Court's opinion in *Fuller v. State*[5] and *Sessums v. State*.[6]  In *Fuller*, we wrote:

"[E]xpert testimony that a particular witness is truthful is inadmissible under Rule 702." *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993).  An expert may not offer a direct opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).  Moreover, an expert is not permitted to give an opinion that the complainant or class of persons to which the complainant belongs (such as child sexual assault victims) is truthful. *Yount*, 872 S.W.2d at 712; cf. *Schutz*, 957 S.W.2d at 70 (testimony about children's ability to accurately perceive or remember is allowable, but not a particular child's *tendency* to do these things).  This is because experts on child sexual abuse "are not human lie

[5]224 S.W.3d 823 (Tex. App.—Texarkana 2007, no pet.).

[6]129 S.W.3d 242 (Tex. App.—Texarkana 2004, pet. ref'd).

13

detectors. Nor are they clairvoyant." *Yount*, 872 S.W.2d at 710 (quoting John E.B. Meyers[,] et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L.Rev. 1, 121 (1989)). Instead of experts, it is jurors who must draw "conclusions concerning the credibility of the parties in issue." *Yount*, 872 S.W.2d at 710.

224 S.W.3d at 832. We concluded that the following elicitation of testimony from a forensic interviewer constituted "an express error" by *Schutz* and *Yount*:

> Q. [by the State] Your 250 interviews that you've done personally and 100 or more -- several hundreds or more that you've helped participate in, *do you kind of get a feel for when someone is being truthful with you*?
>
> A. [by Hunt] We have some things we look for as far as how consistent are the statements and the mannerisms of the child that we're speaking to. We have some things like that, that I look for.
>
> . . . .
>
> Q. Simply because a child comes forward and says I've been sexually abused, does the Child Advocacy Center, and you in particular, automatically believe that child contrary to anything else that is said or done?
>
> A. No, we do not.
>
> . . . .
>
> Q. And based on that interview [with J.W.] and conduct that you witnessed and how she described what happened, *did you form an opinion as to whether she was being truthful with you*?
>
> A. *Yes, I did.*
>
> Q. *And what was that opinion*?
>
> A. *I saw nothing in her demeanor and nothing in the information that she gave me that indicated that she was not being truthful with me.*

14

*Id.* at 835.

In this case, the State's first question and Peavy's response do not constitute an expert opinion regarding truthfulness. In fact, it established that Peavy cannot determine whether a child is telling the truth or lying based on their demeanor. The second question also does not amount to an expert opinion because Peavy merely testified that an opinion regarding truthfulness could be based upon the timing of an outcry. The third and fourth questions relate to whether the children knew the difference between a truth and a lie. Just as expert opinion regarding truthfulness is impermissible, an expert witness may not testify about another witness's general mental capacity for truth-telling, absent a recognized mental condition, unless capacity has been generally attacked. *Schutz*, 956 S.W.2d at 65, 67–69. There is nothing in the record indicating that defense counsel generally attacked K.R.'s or D.G.'s mental capacity for truth-telling prior to Peavy's statement. The fifth and sixth questions were not an elicitation by the State to offer expert testimony since the State was only asking why K.R. did not make an immediate outcry. The State argues that the last question asks whether the outcry was valid, not necessarily whether the outcry was truthful.[7] It also points

---

[7]The statement that "[s]he told me the truth" is something of a half-breed which could be construed to be contained in two of Alberts's objections to his trial counsel's performance, but only tangentially to both. One observes that this statement was nonresponsive to the question which was posed by the State. Although the volunteered statement was objectionable in several respects, one might surmise that an objection lodged to this blurted response might serve more to call the jury's attention to it than withholding an objection to it. The lack of an objection to it may have been a tactical decision on the part of trial counsel.

15

out that no reference to Peavy's testimony was made during closing arguments, thereby minimizing its impact.

We recently addressed comments made by Peavy in an opinion entitled *Upton v. State*, 06-08-00100-CR, 2009 WL 137172 (Tex. App.—Texarkana Jan. 22, 2009, pet. ref'd). In *Upton*, Peavy testified outright that she felt the child victim "was being honest with me at the time." *Id.* at *5. While we cited the general rule that expert opinions regarding truthfulness were impermissible, we also held that counsel was not deficient in failing to object to the isolated impermissible testimony because he could have made a strategic decision not to emphasize it. *Id.* In particular, we stated:

> Trial counsel could have reasonably concluded an objection would have merely emphasized the testimony, stamping it more indelibly into the minds of the jurors than simply allowing it to glide past. Although Peavey's statement was inadmissible, and although trial counsel could have objected and possibly could have obtained a favorable ruling to that effect, it would have been incumbent on counsel to proceed to request a special instruction for the jury to disregard and then to move for a mistrial in order to fully preserve the error. More likely, the objection would have done nothing more than highlight the unsolicited opinion to the jury. The trial counsel's performance was not patently deficient for failing to object.

*Id.*

Even should we determine counsel was deficient in failing to object to the third, fourth, and last question, we would not use this deficiency to reverse his conviction unless the second *Strickland* prong was met. The constitutional right to counsel does not mean Alberts's counsel was required to be errorless. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). For this reason, an isolated failure to object to improper evidence does not constitute ineffective assistance of counsel.

16

*Id.* (citing *Weathersby v. State*, 627 S.W.2d 729 (Tex. Crim. App. 1982)); *see Arcement v. State*, No. 06-08-00130-CR, 2009 WL 383398, at *7 (Tex. App.—Texarkana Feb. 18, 2009, no pet.) (mem. op., not designated for publication) (distinguishing an isolated incident of solicitation of an expert opinion regarding truthfulness from *Sessums*). In analyzing the second *Strickland* prong, we examine counsel's error not as an isolated incident, but in the context of the overall record.

We note that this case is distinguishable from *Fuller* when considering the degree of harm to Alberts. In *Fuller*, the State elicited testimony regarding the victim's credibility from three other witnesses, and made repeated references to their testimony about credibility during argument. 224 S.W.3d at 832–35. Due to the fact that such references were not isolated incidents, we concluded that counsel was deficient and that his deficiency denied the defendant a fair trial. *Id.* at 836. Similarly, in *Sessums*, four expert witnesses, including a psychologist, CPS investigator, and two therapists testified that the victim was truthful. 129 S.W.3d at 247. The State also emphasized the elicited opinions during closing argument. *Id.* at 248. Thus, although we might believe that the better strategy would have been for Alberts's counsel to have objected to the testimony, after examining the overall record, we do not find that Alberts has met his burden to show that, but for such omission, there was a reasonable probability that the result of his trial would have been different. We overrule this point of error.

**C.  Counsel Was Not Required to Object to Mother's Reputation Testimony**

17

Under Rule 608 of the Texas Rules of Evidence, "evidence of truthful character is admissible only after the character of a witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Alberts complains of the following exchange taking place with D.G.'s mother on cross-examination:

> Q. [By the State] His reputation around you is that he's truthful and honest to you, right?
>
> A. [By D.G.'s mother] Yes.
>
> . . . .
>
> Q. Mrs. Drake [prosecutor] didn't try to tell [D.G.] what to say, did she?
>
> A. No.
>
> Q. In fact, she made it abundantly clear that [D.G.] had to tell the truth and only the truth?
>
> A. Correct.
>
> Q. And if he didn't know the answer to a question, he wasn't supposed to answer that question, was he?
>
> A. Correct.
>
> Q. No one has ever told [D.G.] what to say, have they? You haven't?
>
> A. No. Other than the truth.
>
> Q. Okay. Other than to tell the truth. Based on your experience with him, he is a truthful and honest person, right?
>
> A. Yes.

General evidence supporting truthful character may "be liberally employed to respond to attacks on truthful character: there need only be a 'loose fit' between the rebuttal evidence and the predicate attacks on character." *Schutz*, 957 S.W.2d at 72. The use of questions designed to call a witness's character for truthfulness into doubt can be considered a predicate attack. *Id*. During opening statements, counsel for Alberts made the following comments: "[T]here are adults that are present when all this supposedly took place . . . that will say it never happened. It never happened," "You're going to find out that sometimes people with -- children's minds don't have the memory that you and I have," and "Children are subject to not recalling it as it really happened. They are subject to be coached." During cross-examination, Peavy was asked, "what percentage of those children interviewed do not tell it like it is," "[h]ow often do children fantasize about things that did or didn't happen," and "how many times do interviewers such as yourself come in and coach the children into leading them with questions."

The Texas Court of Criminal Appeals has recognized that in prosecutions for sexual offenses, a successful conviction "often depend[s] primarily on whether the jury believe[s] the complainant, turning the trial into a swearing match between the complainant and defendant." *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). The test for determining whether D.G.'s credibility was attacked, such that reputation testimony was proper is "whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by . . . evidence from other witnesses, or statements of counsel (e.g.[,] during voir dire or opening statements." *Michael v. State*, 235

19

S.W.3d 723, 728 (Tex. Crim. App. 2007). Despite the language relating to memory, it appears that the defensive strategy was to suggest that D.G. was coached by adults to fabricate and lie about an incident that did not occur. In this case, a reasonable juror might interpret counsel's questioning and comments as attacks on D.G.'s credibility. Because the record is silent, we may presume this logic drove counsel's failure to object. Therefore, we conclude counsel was not deficient in failing to object to the rebuttal testimony regarding D.G.'s reputation for truthfulness, as well as testimony specifically rebutting the defensive theory that D.G. was coached.

This point of error is overruled.

**D.      Plausible Trial Strategy Explained Counsel's Failure to Object to "Improper Opinion/Hearsay Statements"**

Alberts next complains that the following testimony from D.G.'s mother during redirect was an improper opinion or hearsay:

> Q.      [By the State] You want to believe that he wouldn't do these things to your son, but the fact is, he did them, right?
>
> A.      [By D.G.'s mother] Correct.

Once again, the record is silent as to why counsel failed to object to this testimony. Thus, Alberts has failed to rebut the presumption that his counsel's decision was in some way reasonable. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). We can assume it was merely to prevent drawing the jury's attention to the testimony. Thus, we overrule this point of error as well.

**IV.      Error in Exclusion of Evidence and Bias at Punishment**

20

We review the admission of evidence for whether there is an abuse of discretion such that the trial judge's decision lies outside "the zone of reasonable disagreement." *Berry v. State*, 179 S.W.3d 175, 179 (Tex. App.—Texarkana 2005, no pet.). The trial court must first determine if the evidence is relevant under Rule 401. Alberts argues that the trial court erred by failing to permit him to testify that he was impotent at the punishment phase. Alberts correctly declares that "[r]elevant evidence in the punishment context is that which helps the jury tailor the sentence to the particular offense and tailor the sentence to the particular defendant." *Najar v. State*, 74 S.W.3d 82, 86–87 (Tex. App.—Waco 2002, no pet.). He contends evidence of impotence is a mitigating factor which is not "per se inadmissible."

As the trial court explained, Alberts could have committed the acts for which he was found guilty despite impotence, the condition had no bearing of whether Alberts could or would reoffend, and ultimately would not help the jury determine his appropriate sentence. We hold the trial court did not abuse its discretion in this matter. Alberts further believes the trial court demonstrated bias because the trial court explained the reason for its ruling in the presence of the jury. After reviewing the record, we do not find the trial court failed to maintain an attitude of impartiality, acted as an advocate for the State, or otherwise exhibited bias in explaining to trial counsel why Alberts's impotence was irrelevant. As part of its explanation, the trial court remarked that if Alberts was attempting to introduce impotence as evidence of mitigation, he should have done so during the guilt/innocence phase. Alberts contends this constituted a comment by the trial court on Alberts's

21

failure to testify during the guilt/innocence phase. We cannot reason that such a comment harmed Alberts during the punishment phase, especially since he testified during punishment. These points of error are overruled.

Finally, Alberts attempted to introduce testimony from psychologist Joann Ondrovik. After a preliminary questioning took place in order to establish Ondrovik's qualifications as an expert, Alberts's counsel asked Ondrovik if she had evaluated whether Alberts would be a good candidate for probation (community supervision) and Ondrovik responded that she had. Alberts's counsel then was able to utter, "What was your -- ," at which point he was interrupted by the State's objection urging that Ondrovik was "not in the business of deciding who gets probation." The trial court allowed the State to take Ondrovik on voir dire; during this, the State attempted to establish that Ondrovik cannot "ethically" determine whether a sex offender is cured "because you can't predict" such outcomes. The trial court did not allow Ondrovik to testify whether Alberts would be at risk for reoffending. Throughout this process, Alberts's counsel neither elicited an opinion from Ondrovik regarding Ondrovik's opinion as to whether Alberts would be a good candidate for community supervision, nor was there any other offer of evidence of that nature presented. Although one might presume that the interrupted question Alberts was posing to Ondrovik concerned whether she considered Alberts to be a good candidate for community service, that is not an absolutely ironclad presumption. The only way this Court is able to definitively ascertain the nature of the evidence which Alberts apparently intended to present is by reading Alberts's brief on appeal. To

22

preserve error concerning a trial court's exclusion of evidence, the substance of the excluded evidence must be shown by an offer of proof unless it is apparent from the context of the questions asked. TEX. R. APP. P. 33.2; TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). Here, we conclude that the evidence that Alberts was seeking to elicit from Ondrovik's answer was not apparent from the question fragment spoken by Alberts's counsel. Thus, the issue has not been preserved for our review. Alberts's last point of error is overruled.

## V.    Conclusion

Because we find that Alberts was subjected to multiple punishments arising out of one act involving D.G., we reverse the trial court's judgment finding him guilty of indecency with a child by exposure under cause number 22305 and render a judgment of acquittal. The trial court's remaining judgments under this cause number are affirmed.

Bailey C. Moseley
Justice

CONCURRING OPINION

It appears to me that the error in excluding Dr. Ondrovik's testimony was preserved for appellate review. After qualifying the psychologist concerning her education and experience as one who has worked with over 1,000 sexual offenders, the defense attorney established that Ondrovik

had assessed and evaluated the defendant. She explained the tests used for the evaluation and then the defense attorney asked: "Did you evaluate Mr. Alberts as to whether or not he'd be a good candidate for probation? She answered that she did. The next, interrupted question, was, "What was your -- ."

At that time the State began a series of objections, interruptions, and colloquy with the trial court that continued for several typewritten pages in the record. The State objected that it was not the expert's decision whether or not probation was proper and that she had a financial interest in supervising sexual offenders. The defense attorney stated to the court that he was trying to elicit testimony from the witness revealing the result of her evaluation of Alberts for probation. At that time the trial court stated the testimony would be allowed, whereupon the State told to the court, "we're going to -- can I take this witness on voir dire?"

During the voir dire examination the State continually suggested the witness could not ethically testify whether or not a sex offender would reoffend. At the end of this voir dire the State requested the trial court exclude Ondrovik's testimony "that this person is not at risk to reoffend." Once again the defense attorney asked that the expert witness be allowed to "finish her testimony she started, as it relates to her evaluation of him and whether or not he would be a good candidate for probation." Apparently changing its mind, the trial court agreed with the State and ruled "her testimony on this matter will not go any further than what -- where we are right now." The defense attorney objected to the ruling.

A party whose evidence has been excluded must make an offer of proof at which time the substance of the evidence was made known to the court, or was apparent from the context within the questions asked. TEX. R. EVID. 103(2).

The record demonstrates, despite the continued interruptions, that defense counsel presented to the trial court the substance of the evidence the expert would offer—she had evaluated Alberts and was prepared to present evidence of whether he would be a suitable candidate for probation. Even if the offer had not explicitly apprised the court of the substance of the testimony, the questions asked and the sequence of events left nothing to the imagination—the evidence sought to be presented was readily apparent within the questions asked.

The State's brief cites this Court's opinion in *Hardin v. State*, 20 S.W.3d 84 (Tex. App.—Texarkana 2000, pet. ref'd), which held testimony concerning a defendant's "suitability for probation" is generally inadmissible, but was proper to rebut the defendant's evidence. *Id*. at 90. But the State failed to acknowledge the more recent Texas Court of Criminal Appeals opinion which specifically held that properly qualified witnesses may offer evidence of a defendant's suitability for probation (community supervision). *Ellison v. State*, 201 S.W.3d 714, 717 (Tex. Crim. App. 2006)

(allowing a probation officer to testify to the defendant's suitability for probation (community supervision)).[8]

The expert witness was in court prepared to testify; her qualifications were not challenged; she had examined Alberts to determine if he would be a candidate for probation (community supervision); the trial attorney explained several times that was the subject of her testimony; the trial court clearly understood the issue presented and excluded the evidence. The fact that she did not utter the words that she thought he was either a good or a bad candidate is, in this context, irrelevant; whatever her expert opinion, whether he was a suitable candidate for community supervision or not, the evidence was admissible. ("Today's decision gives equal opportunity to the State and a defendant to put on testimony of the defendant's suitability for community supervision." *Id*. at 722.) I believe the issue was preserved, and the trial court erred in excluding the testimony.

Was the error harmful and reversible? What is the likelihood that the jury would have granted Alberts community supervision if the expert's testimony had been properly allowed? An examination of the entire record reveals very damning evidence. Alberts was found guilty by this

---

[8]The Texas Rules of Professional Conduct establish that a lawyer has a duty of candor toward the tribunal. TEX. R. PROF'L CONDUCT 3.03, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit G app. A (Vernon 2005).

> (a) A lawyer shall not knowingly:
> . . . .
> (4) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

jury of committing several acts of sexual assault on young children in his family. With or without expert testimony, convincing a jury, which has found a defendant guilty of numerous acts of sexual assault on children, to release him on community supervision is a daunting task. While I believe the evidence was admissible, I would further find that its exclusion had no substantial and injurious effect or influence in determining the jury's verdict. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). Consequently, it is not a reversible error.

I concur with the judgment reached in the majority opinion.


Jack Carter
Justice

Date Submitted:        November 6, 2009
Date Decided:          December 11, 2009

Publish