Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio





## MEMORANDUM OPINION

No. 04-11-00036-CR

Domingo **PACHECO,** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-1813
Honorable Sid L. Harle, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:          Sandee Bryan Marion, Justice
                 Phylis J. Speedlin, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  February 15, 2012

AFFIRMED

Domingo Pacheco, Jr. appeals his convictions for indecency with a child by contact and

indecency by exposure, alleging ineffective assistance of counsel and double jeopardy. We

affirm the trial court's judgment.

### BACKGROUND

Pacheco was married to T.K. from 1998 to 2005, when they divorced. Their child, J.P.,

was born on September 3, 1999. After the divorce, Pacheco would pick up J.P. about four times

a month and on weekends. During 2008, Pacheco was living at his mother's house, which had no water or electricity, so Pacheco would sometimes take J.P. to a hotel when he picked her up. In May 2008, just before the end of the school year, J.P. came home and told her mother, T.K., that when they were in the hotel room Pacheco "had touched her in places that a dad is not supposed to," had made her touch his private parts, and had asked her to put her lips on him. T.K. called Pacheco and confronted him with the allegations. Pacheco replied that he had been having "some f**cked up dreams and he could have done something like that." Pacheco told T.K. to go ahead and call CPS and the cops. T.K. took J.P. to the police station where they made a report. Pacheco was indicted on four counts of indecency with a child by contact, and one count of indecency with a child by exposure.

Pacheco pled not guilty, and was tried by a jury. At trial, J.P. testified that after the divorce, her father lived with his mother and that when she would visit him at her grandmother's house he would touch her with his hand between her legs on "her privates" over her clothes when she was in bed under the covers; the touching happened "a lot," "more than five times." Pacheco would tell her it was ok because he was her dad; he also told her not to tell anyone or he would lose his job. J.P. also testified that when she and Pacheco spent the night in a hotel room because her grandmother's house had no electricity, her dad laid in the bed and took his private part out of his clothes, which were "down to his knees," and asked her to touch it; he took her hand and made it "go up and down" on his private part, and her hand was touching his skin. J.P. stated she did not remember what her dad's private part looked like; it was "under the blanket." J.P. also testified that while they were in the hotel room Pacheco asked her "if I wanted to put my mouth on it and I told him no." J.P. told her mom about these incidents and they reported it to the police. J.P. stated she told her mom that it "happened a lot." J.P. also testified that she

told the female officer everything that she testified to at trial. Officer Joanna Williams and T.K., the mother of J.P., also testified as State's witnesses at trial.

The jury found Pacheco guilty on all five counts. Pacheco was sentenced to ten years' imprisonment on each count, with the sentences to run concurrently. Pacheco now appeals, asserting that he received ineffective assistance of counsel because his attorney failed to object to inadmissible testimony, and that his conviction and punishment on Count V for indecency by exposure is barred by double jeopardy.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, Pacheco asserts his trial counsel rendered ineffective assistance by failing to object to the following purportedly inadmissible evidence during the guilt/innocence phase: (1) hearsay statements by Officer Joanna Williams; and (2) testimony by Officer Williams and J.P.'s mother that improperly bolstered J.P.'s credibility.

To establish ineffective assistance, Pacheco has the burden to prove that his trial counsel's performance was deficient and that it prejudiced his defense, in that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Pacheco must provide a sufficient record that affirmatively demonstrates ineffective assistance by a preponderance of the evidence, and overcomes the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To establish deficient performance, Pacheco must show that counsel's performance fell below an objective standard of reasonableness and must rebut the presumption that counsel's decisions were based on sound trial strategy. *Thompson*, 9

S.W.3d at 812-13. In evaluating counsel's performance, we do not focus on isolated acts or omissions, but review the totality of counsel's representation. *Id.* at 813. Failure to prove either prong of the *Strickland* test will defeat an ineffective assistance claim. *Id.*; *Perez*, 310 S.W.3d at 893. The standard for reviewing counsel's performance has never been interpreted to mean a defendant is entitled to "errorless or perfect counsel." *Badillo v. State*, 255 S.W.3d 125, 129 (Tex. App.—San Antonio 2008, no pet.) (quoting *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)).

Here, although Pacheco filed a motion for new trial, he did not assert ineffective assistance; therefore, there is no evidence in the record about the reasons, or lack of reasons, underlying counsel's conduct. Pacheco acknowledges the difficult task of establishing ineffective assistance on direct appeal based solely on the trial record, but contends that there could be no plausible strategic reason for counsel's failure to object, and counsel's conduct was so outrageous that no competent attorney would engage in it. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (stating that in the absence of evidence of counsel's reasons for the challenged conduct, the court will "commonly assume a strategic motivation if any can possibly be imagined," and will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it").

*Hearsay*. Pacheco first cites his counsel's failure to object to testimony by Officer Joanna Williams which Pacheco asserts constituted an inadmissible hearsay recitation of the facts of the offenses as told to the officer by J.P. Williams testified that her role in the investigation was to assess whether there was a crime. After engaging in some small talk with J.P. and determining that J.P. knew the difference between the truth and a lie, Officer Williams

began to ask J.P. questions regarding what had happened to her. The officer testified about the interview as follows:

Q. And, can you recall, what kind of questions did you ask her, in general?

A. In general, I asked [J.P.] what happened. And she had explained to me that she [had] gone to visit with her father. She explained that they had gone to a hotel . . . So I asked her what happened at the hotel, and she had explained to me that her father had wanted her to touch his middle area. I took it to mean his penis, but I had to get her to explain what middle area meant to her.

Q. Okay.

A. So I asked her did he have clothes on or did she touch skin? And she —[1]

Q. What's the next thing that [J.P.] told you regarding if she touched skin or clothing?

A. She told me she touched skin because her father had pulled what she called his middle area out from his underwear.

Q. Okay. And was she able to describe any other sexual acts that occurred in this hotel?

A. She told me that she refused to touch what she called his middle area and he took her hand and made her touch it.

Q. Okay. Did she say anything about her father requesting her to put her mouth on his middle area?

A. Yes, yes.

Q. Tell us about that, please.

A. I asked was there anything else that had happened to her, and she said that — that he stood in front of her and requested that she put her mouth on it. [J.P.] said no. And that [J.P.] told me that her father said, Are you going to do it or not? And [J.P.] told me that when she just didn't move, that her dad went into the bathroom and got dressed.

Even assuming without deciding that counsel's failure to raise a hearsay objection was deficient, Pacheco has failed to prove his defense was prejudiced by the failure to object because

---

[1] Defense counsel objected to "a narrative" at this point, which was sustained.

the officer's statements were cumulative of J.P.'s earlier testimony about the hotel incident, as well as T.K.'s testimony about J.P.'s outcry. Pacheco asserts that Officer Williams' testimony was harmful because it added new details. However, J.P.'s testimony about the incident in the hotel room was actually more detailed – she testified that when Pacheco took her hand and made her touch his private part that he made her hand move "up and down" and that his clothes were "down to his knees." Pacheco has not shown that counsel's failure to object to any hearsay statements by Officer Williams deprived Pacheco of a fair trial, i.e., a trial whose result is reliable. *Perez*, 310 S.W.3d at 893 (citing *Strickland*, 466 U.S. at 687); *see Bryant v. State*, 282 S.W.3d 156, 163 (Tex. App.—Texarkana 2009, pet. ref'd) (citing *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986)).

*Bolstering*. Secondly, Pacheco complains that his trial counsel failed to object to testimony by Officer Williams and T.K. expressing their opinion that J.P. was telling the truth. *See Lopez v. State*, 343 S.W.3d 137, 140-41 (Tex. Crim. App. 2011) (direct opinion testimony about the truthfulness of another witness, without prior impeachment, is inadmissible). Specifically, Pacheco points to T.K.'s answer in response to the prosecutor's question about how she reacted when J.P. made her outcry. T.K. testified, "The first thing I asked her, I said, 'Oh, My God. Are you serious? Are you telling me the truth?' And she said, 'Yes, Mom.' She goes, 'You know I wouldn't lie.' She goes, 'You know I love my dad, but I can't believe he did this to me.'" This hearsay testimony by T.K. was part of her outcry testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2011). Moreover, T.K. was not testifying to her personal opinion that J.P. "wouldn't lie," or that she believed J.P. was telling the truth; T.K. was explaining what her reaction was to J.P.'s outcry and reciting what J.P.'s answers were when T.K. questioned her about the outcry. T.K.'s statements did not constitute direct opinion

testimony about J.P.'s truthfulness. *See Lopez*, 343 S.W.3d at 140-41; *c.f.*, *Fuller v. State*, 224 S.W.3d 823, 833-34 (Tex. App.—Texarkana 2007, no pet.) (mother's statements that she believed her daughter and her allegations went to the truth of the specific allegations and thus constituted improper bolstering of the complaint's credibility, and counsel was ineffective for failing to object).

Pacheco also complains of Officer Williams' testimony that, when she was evaluating whether J.P. knew the difference between the truth and a lie, J.P.'s mother, T.K., interrupted and said to J.P., "I know I always told you to tell the truth; no matter what happens, tell the truth." In addition, Pacheco complains that the following testimony by Officer Williams improperly bolstered J.P.'s credibility:

> Q: Now, when you were watching [J.P.] tell you what occurred to her, did you ever see anything where her story was inconsistent, things didn't make sense, or did it seem like a plausible explanation was being given to you?
>
> A: It seemed plausible because she was very matter of factually [sic]. I asked questions, she gave an answer. So there were no long, drawn-out details that I would have to decipher what had happened. She answered my questions directly.
>
> ***
>
> Q: Okay. And when you —well, let me ask you this, Officer: Once you're done talking to [J.P.], what's the next step that you take?
>
> A: I had to advise [J.P.'s mother] that, yes, there was definitely an offense by the standards of the Texas Penal Code, and I advised her that I had to do a follow-up . . . .

Pacheco asserts there was no plausible strategy for his counsel's failure to object to this testimony; therefore, his performance was deficient. We disagree. Counsel may have strategically decided not to object to Williams' testimony about T.K.'s statement to J.P. instructing her to "tell the truth" during the interview to avoid emphasizing the matter before the

jury and to avoid making it seem that Pacheco had something to hide and was not interested in "the truth" coming out. As for Officer Williams' testimony that she satisfied herself that J.P. understood the difference between the truth and a lie and found J.P.'s story "plausible" because her answers were very "matter of fact," it was given in the context of Williams' discussion of the initiation of the investigation and her assessment that further follow-up was warranted. *See Lee v. State*, 29 S.W.3d 570, 577-78 (Tex. App.—Dallas 2000, no pet.) (an officer may testify as to how the investigation began and how the defendant became a suspect) (citing *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995)). Defense counsel may therefore have determined that Officer Williams' testimony that she believed J.P.'s story was "plausible" did not constitute an opinion that J.P. was a truthful person, and thus was not objectionable. *See Lopez*, 343 S.W.3d at 140-41. Even assuming that Officer Williams' testimony was an unqualified direct opinion that J.P. was being truthful, defense counsel may have made a tactical decision not to object to avoid drawing undue attention to it or because counsel may have believed it was already clear to the jury that Officer Williams believed J.P.'s story because she was the officer who performed the initial assessment and advanced the investigation. *See id.* at 141.

*Conclusion*. Trial counsel's reasons for his decisions do not appear in the record on direct appeal, and Pacheco has not met his burden of proving there was no imaginable strategy for counsel's failure to object to the above cited testimony. *See Garcia*, 57 S.W.3d at 440. Pacheco has failed to rebut the strong presumption of effective assistance, and has not shown that counsel's conduct was so outrageous that no competent attorney would engage in it or that the outcome of the trial is not reliable due to counsel's errors. *Id.*; *Lopez*, 343 S.W.3d at 142. Accordingly, we overrule Pacheco's complaint of ineffective assistance of counsel.

**DOUBLE JEOPARDY**

In his second issue, Pacheco argues his conviction and punishment on Count V for indecency by exposure must be vacated because the offense arises out of the same single act on or about April 27, 2008 that also forms the basis for Count IV, indecency by contact; therefore, he is being subjected to multiple punishments for a single criminal act, which violates double jeopardy. *See Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (Double Jeopardy Clause protects against multiple punishments for the "same" offense). Pacheco did not raise a double jeopardy objection in the trial court, and presents the issue for the first time on appeal. A double jeopardy claim must generally be raised in the trial court to preserve any error for appellate review; however, a double jeopardy violation can be considered for the first time on appeal when the error is clearly apparent on the face of the record and enforcement of the usual rules of procedural default serves no legitimate purpose. *Bignon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008); *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). Here, the alleged error would be apparent on the face of the record, and may thus be reviewed. *Rangel v. State*, 179 S.W.3d 64, 70-71 (Tex. App.—San Antonio 2005, pet. ref'd) (where defendant is charged in a single indictment with two counts and claims one count is a lesser-included offense of the other, any error is apparent on the face of the record and may be reviewed).

A double jeopardy claim based on multiple punishments can arise in two contexts, one of which is when a defendant is convicted and punished for a lesser-included offense and the greater offense when both arose out of the same act; in that situation the same conduct is punished twice—"once for the basic conduct, and a second time for that same conduct plus more." *Bignon*, 252 S.W.3d at 370; *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). A defendant cannot be convicted and punished for a completed act of sexual assault and

also for conduct that is "demonstrably a part of the commission of the completed act." *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004). When the facts of the case show that the conduct constituting the lesser offense is demonstrably part of the commission of the greater offense, then the multiple punishments are barred by double jeopardy. *Barnes v. State*, 165 S.W.3d 75, 87-88 (Tex. App.—Austin 2005, no pet.) (holding convictions for aggravated sexual assault by both genital-to-genital contact and by genital penetration violated double jeopardy where there was no evidence suggesting defendant touched child's genitals "except as an incident to the penetration"). However, when a person commits more than one discrete sexual assault against the same complainant, he may be convicted and punished for each separate act, even if the acts were committed in "close temporal proximity." *Id.* at 87 (citing *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999)). As noted by the Court of Criminal Appeals in *Patterson*, "[i]ndecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case." *Patterson*, 152 S.W.3d at 92. Thus, the issue is whether the record in Pacheco's case shows that the exposure was a separate act, or whether it was incident to and subsumed by the indecency by contact. *See id.*

Pacheco asserts the undisputed facts show that Counts IV and V are based on only "one indivisible act," and that he may not be convicted and punished for both the lesser conduct of indecency by exposure and the "same conduct, plus contact" under both Counts IV and V. He relies primarily on *Alberts v. State*, 302 S.W.3d 495, 502 (Tex. App.—Texarkana 2009, no pet.), in which the State conceded that convictions for indecency by exposure and for indecency by contact were the result of the same single act. The court held in *Alberts* that, absent legislative intent to the contrary, Penal Code section 21.11 governing indecency with a child does not allow

a defendant to be punished twice for the same act under subsections (a)(1) and (a)(2).[2] *Id.* The court stated that, "unless the State alleged that a separate act occurred (a circumstance which would remove our analysis outside of the double jeopardy realm), proof of the same or less than all the facts required to establish that a person committed indecency by contact would also necessarily establish indecency by exposure during the act." *Id.* The court noted that indecency by exposure differs from indecency by contact only in the respect that touching, which is a greater injury, is not required. *Id.* (rejecting State's argument that knowledge of child's presence was also unique to indecency by exposure because knowledge is also necessary for a person to engage in sexual contact with the child). The court concluded that Alberts was subjected to multiple punishments for the same single act of indecency under section 21.11, in violation of double jeopardy. *Id.*

Pacheco's case is distinguishable from *Alberts*, however, because here there is evidence on which the jury could have reasonably found that more than one act of indecency occurred in the hotel room "on or about April 27, 2008."[3] J.P. testified that when Pacheco made her hand touch his private part he was laying in the bed with her and it was "under the blanket." J.P. also testified that Pacheco asked her to put her mouth on his private part, but denied remembering what it looked like. But, Officer Williams testified that when she asked J.P. "was there anything

---

[2] A person may commit indecency with a child by contact or exposure. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (2) (West 2011). The offense of indecency with a child by contact is committed by engaging in sexual contact with a child or causing the child to engage in sexual contact if the child is younger than 17 years of age; "sexual contact" is defined as any touching, including touching through clothing, of any part of the genitals of the child with the intent to arouse or gratify the sexual desire of the person. *Id.* at § 21.11(a)(1), (c)(1). The offense of indecency with a child by exposure is committed by exposing any part of the person's genitals, knowing the child is present, with the intent to arouse or gratify the sexual desire of any person. *Id.* at § 21.11(a)(2)(A).

[3] The State is permitted to use "on or about" language in an indictment without being required to prove a precise date on which the offense was committed, as long as the date of the offense is anterior to the indictment. *Garcia v. State*, 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998). The record suggests that J.P. and Pacheco went to a hotel room more than once, as there is evidence that Pacheco's mother's house had no electricity for an extended period of time.

else that had happened to her," J.P. told the officer that Pacheco "stood in front of her and requested that she put her mouth on it," creating a reasonable inference that Pacheco exposed his penis to J.P. The span of time between the touching and the exposure is not clear from the record, and the evidence in the record does not show that the exposure was "demonstrably part of the commission of" the sexual contact. *See Patterson*, 152 S.W.3d at 92. The record is simply unclear as to whether the indecency by exposure and by contact occurred as part of the same act during the same nighttime hotel stay. *See Vick*, 991 S.W.2d at 833. Based on this record, the jury could have reasonably found that Pacheco engaged in more than one discrete act of indecency with J.P. in the hotel room. *See Patterson*, 152 S.W.3d at 92 (indecency by exposure "may or may not" be part of indecency by contact, depending on the facts of the case). Therefore, Pacheco has failed to meet his burden to show that it is "clearly apparent" that the indecency by exposure was committed as a part of, and subsumed into, the indecency by contact. *See Bignon*, 252 S.W.3d at 370; *Langs*, 183 S.W.3d at 685. Pacheco has not shown that a multiple punishments double jeopardy violation is clearly apparent on the face of this record. *See Gonzalez*, 8 S.W.3d at 643. Accordingly, we overrule Pacheco's double jeopardy issue.

Based on the foregoing analysis, we overrule Pacheco's issues on appeal and affirm the trial court's judgment.

Phylis J. Speedlin, Justice

DO NOT PUBLISH