# NO. 12-14-00103-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RODOLFO AGUIRRE-MORENO,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rodolfo Aguirre-Moreno appeals his conviction for aggravated sexual assault of a child, for which he was sentenced to imprisonment for twenty years. In one issue, Appellant argues he received ineffective assistance of counsel. We affirm.

## BACKGROUND

Appellant was charged by indictment with aggravated sexual assault of a child and pleaded "not guilty." A jury found Appellant "guilty" as charged and assessed his punishment at imprisonment for twenty years. The trial court sentenced Appellant accordingly, and this appeal followed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, Appellant argues that he received ineffective assistance of counsel at trial.

### Governing Law

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below

an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See id.* Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See id.* Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).

Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id.* at 835.

Moreover, after proving error, the appellant must affirmatively prove prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.–Texarkana 2000, pet. ref'd). The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. *Burruss*, 20 S.W.3d at 186. It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings. *Id.* He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt or that the extent of his punishment would have been less. *See id.*; *see also Bone v. State*, 77 S.W.3d at 837.

**Testimony Concerning Truthfulness of Child Victim**

Appellant first argues that his counsel was ineffective because he failed to object to Tyler Police Officer Dianna Brown's testimony that the allegations of the victim, H.A., were truthful. When Brown made these statements, she was testifying generally concerning the victim's sister L.A.'s telling her that H.A. admitted she lied about the allegations. More specifically, Brown testified, in pertinent part, as follows:

> Q. Obviously, if [H.A.] said, I lied about all this, that's a pretty big deal.
>
> A. Yes, sir.
>
> Q. So you wanted to ask [L.A.] a lot more questions about that statement that she supposedly heard from [H.A.].
>
> A. Yes, sir. I want to be able to - - if that's the case, if she really did say, Hey, I lied, then I need to know the details on that to see if there's a situation where she's lying, and she told her sister, I lied.
>
> And I need to go back and [be] able to reinterview [H.A.], but I need the details of it. But I didn't get that here, because as this interview goes on [with L.A.] it - - to me, it shows during the interview that [L.A.]'s not telling me the truth.
>
> And there's nothing that really made me feel like [H.A.] had lied, you know, said that she lied. I didn't feel that was true, and there's several reasons why I feel that way.
>
> . . . .
>
> Q. So [L.A.] eventually admits that [H.A.] never said this didn't happen.
>
> A. Correct. And - -
>
> . . . .
>
> Q. How many kids would you say you've interviewed in the four years you were in the child crimes division?
>
> A. I couldn't give you a number. A lot. Especially when they're older, because I feel like I really do need to question them deeper and get more details.
>
> When a child is lying, they're not going to be able to have details for you. From my training and experience, when a child lies, they get caught in that because they don't have specific details that we're needing that they don't - - you know, they're not trained in what I do, so they don't know what I'm looking for.
>
> When I have a child that's not lying, they're able to continue to give me the details, even if I have to ask them - - you know, I interview them today and interview them next week. We have more details, more details, more details. Somebody that's lying is not going to be able to give that.
>
> Q. All right. In your entire interview with [H.A.], based on the information you had from Bianca Cortez and the responding officers, the information from the interviews of the other

children, the CAC interviews that you listened to, you ultimately conducted an interview with [H.A.], was there anything significant about that interview to your investigation?

A. Like I said earlier, she was able to give me more details, very specific details that I feel from my experience showed more that she's telling the truth.

There's things that she stated that, again, if a child's making a false statement, they wouldn't have these details, these type of details, and she was able to give me those details.

A direct opinion on the truthfulness of a child victim in a sexual assault case is inadmissible evidence. *See Yount v. State*, 872 S.W2d 706, 708 (Tex. Crim. App. 1993). While an expert may testify to behaviors and traits that might be indicia of manipulation, a direct comment on a complainant's "truthfulness" is "absolutely inadmissible." *Sessums v. State*, 129 S.W.3d 242, 247 (Tex. App.–Texarkana 2004, pet. ref'd). But where the witness makes such an inadmissible statement that is not responsive to the question posed by the State, "one might surmise that an objection lodged to this blurted response might serve more to call the jury's attention to it than [would] withholding an objection to it." *Alberts v. State*, 302 S.W.3d 495, 506 n.7 (Tex. App.–Texarkana 2009, no pet.). Thus, "[t]he lack of an objection . . . may have been a tactical decision on the part of trial counsel." *Id.*

Further still, the court of criminal appeals has held that failure to object to "truthfulness" testimony is not the sort of ineffectiveness that is apparent from a record which does not contain evidence of the attorney's underlying rationale for his actions. *See, e.g.*, *Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011); *but see Andrews v. State*, 159 S.W.3d 98, 102--03 (Tex. Crim. App. 2005) (reversing a conviction "in a rare case" on the basis of ineffective assistance of counsel when trial counsel did not object to a misstatement of law by the prosecutor during argument); *Fuller v. State*, 224 S.W.3d 823, 836 (Tex. App.–Texarkana 2007, no pet.) (holding that, in light of *Andrews v. State*, failure to object to solicited testimony concerning child sexual assault victim's truthfulness not based on plausible trial strategy).

The "extremely unusual circumstances" present in *Andrews* are not present in the case at hand. Counsel's reasons in *Andrews*, if any, were unnecessary to resolve the ineffective assistance of counsel claim. *See Berry v. State*, No. 05-04-01161-CR, 2005 WL 1515512, at \*3 (Tex. App.–Dallas June 28, 2005, no pet.) (op., not designated for publication). But counsel's failing to object to a misstatement of the law that is detrimental to the defendant when the harm is so clearly presented on appeal is quite different from counsel's failure to object to a witness's opinion on truthfulness, which was not responsive to the questions posed by the State and which

was potentially obscured by the witness's extensive narrative. *Cf.* ***Alberts v. State***, 302 S.W.3d at 506 n.7; ***Upton v. State***, No. 06-08-00100-CR, 2009 WL 137172, at *5 (Tex. App.–Texarkana Jan. 9, 2009, pet. ref'd) (mem. op., not designated for publication) (distinguishing ***Fuller v. State*** where opinion concerning truthfulness was neither elicited nor extensively emphasized by State).

Having reviewed the record in the instant case, we conclude that the facts before us are distinguishable from the facts in ***Andrews*** and ***Fuller***, and Appellant's trial counsel's alleged deficient conduct is not "so outrageous that no competent attorney would have engaged in it." *See* ***Menefield***, 363 S.W.3d at 593. Thus, we decline to hold that the record before us contains all of the information needed for us to conclude that there could be no reasonable trial strategy for Appellant's trial counsel's alleged unprofessional acts. Therefore, we hold that Appellant has not met the first prong of ***Strickland*** because the record does not contain evidence concerning Appellant's trial counsel's reasons for choosing the course he did. As a result, Appellant cannot overcome the strong presumption that his counsel performed effectively.

## Testimony that Witness had Reason to Believe Abuse had Occurred

Appellant next argues that counsel was ineffective because he failed to object to Child Protective Services Investigator Ben Bryan's testimony that he determined as a result of his evaluation that there was "reason to believe" that the alleged abuse had occurred. However, such "reason to believe" determinations have been held to not be inadmissible as vouching for the truthfulness of a child sexual assault victim's allegations. *See* ***Johnson v. State***, 970 S.W.2d 716, 720 (Tex. App.–Beaumont 1998, no pet.); ***Bowers v. State***, No. 02-02-00250-CR, 2003 WL 22026428, at *6 (Tex. App.–Fort Worth Aug. 29, 2003, pet. ref'd); *see also* ***Wagner v. State***, Nos. 14-07-00906-CR, 14-07-00907-CR, 2009 WL 838187, at *8 (Tex. App.–Houston [14th Dist.] Mar. 31, 2009, pet. ref'd) (mem op., not designated for publication). Therefore, we conclude that Appellant's counsel was not ineffective for his failure to make a meritless objection. *See* ***Thacker v. State***, 999 S.W.2d 56, 67 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd) (trial counsel not ineffective for failure to make meritless objections).

## Reunification Testimony

Appellant also contends that counsel was ineffective because he failed to object to Bryan's comments amounting to a suggestion that Appellant was a "repeat sex offender." Specifically, Bryan testified, in pertinent part, as follows:

Q. Do you have an opinion as to whether or not this particular family should be reunified?

A. Yes, I do.

Q. What is that opinion?

A. They should not be reunified.

Q. And why is that?

A. In my experience and training, you cannot fix sexual abuse issues. It's something that is - - it is beyond the scope of anything.

In my experience, people who are sex offenders will reoffend. Typically, they've offended before that. We may not know about it. But, eventually, some of that stuff comes out.

But, typically, it's too dangerous of a situation. Even if it was an isolated incident, it's too dangerous to put that - - those children back in a situation where that could happen.

Typically, sex abuse, sex crimes are crimes of opportunity. And when the person is in a situation where they have an opportunity to do that, they'll try to do that.

Despite Appellant's characterization of Bryan's testimony as a suggestion that Appellant is a repeat sex offender, based on our review of his testimony, we cannot conclude that he made any statement or implication to that effect. But even if he had, during cross examination, Appellant elicited the following testimony from Bryan, which demonstrated that his testimony concerning reunification was based on an opinion unrelated to the facts in the instant case.

Q. Okay. And so when - - and I understand. I just want to make sure we're clear on this.

What you're telling the jury is, it's really not about this particular case or this particular family. Your opinion, after being an investigator for many, many years is, when there's a sexual allegation and an RTB has happened, as far as you're concerned, that's it. They should not be reunified.

A. Yes. If it's a sex abuse allegation, an RTB?

Q. Right. Regardless of - -

A. Last - - I click that last button. I think it's over.

Q. Right. And so it's nothing like you have made that specific determination for this particular case; it's just that you would do that for any case that fit this category.

A. Yes.

Q. Okay. I mean, you didn't go and investigate the family and determine whether or not - - that wasn't your job to see whether they should or shouldn't be reunified.

A. That's correct.

6

Q. It's just - - it's almost like a personal opinion.

A. Yes.

Based on our review of the record, we cannot conclude that Appellant's counsel's failure to object was not based on a sound trial strategy. As the State posits in its brief, counsel may have believed that it was more advantageous to Appellant to have Bryan explain his testimony on cross examination than for counsel to merely object to it. But without a record demonstrating why Appellant's counsel made the choices he did, Appellant cannot overcome his burden of proof in this instance. Therefore, we hold that Appellant has not met the first prong of *Strickland*. As a result, Appellant cannot overcome the strong presumption that his counsel performed effectively.

Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered June 10, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 10, 2015**

**NO. 12-14-00103-CR**

**RODOLFO AGUIRRE-MORENO,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 241-1209-13)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*