

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00128-CR

_____

JAMES EARL LEMONS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 25950

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Although Darryl Cox erroneously believed that he and Karen Cox had been happily married to one another for some twenty-one years, Karen had been engaged in a clandestine affair with James Earl Lemons (the appellant here), a man Darryl knew and occasionally encountered. After a jury determined that Lemons was the person who had shot Darryl with a gun, Lemons was convicted by a jury of aggravated assault with a deadly weapon and was sentenced to seventeen years' imprisonment.

On appeal, Lemons argues that his counsel rendered ineffective assistance because he failed to object to the introduction of extraneous offenses, "elicited extraneous offenses committed by the defendant from a witness," and "failed to request a limiting instruction on the extraneous offenses after they were admitted as evidence before the jury."[1] We affirm the trial court's judgment.

I.    Factual Background

Darryl had encountered Lemons around the Cox home on several occasions which one might characterize as suspicious circumstances.

In the first of these unusual incidents, Darryl testified that he witnessed Lemons "peeking into the -- to the back end of the [Cox] house." Darryl said that Lemons, being questioned about this behavior, offered the explanation to Darryl "that we had a nice family and [he] wanted to see

---

[1]This is not the first time that a conviction of Lemons for this conduct has come before this Court. Lemons was convicted in an earlier trial arising out of the same facts as those presented in this case, and that conviction was overturned on appeal on the ground of ineffective assistance of counsel. *Lemons v. State*, No. 06-10-00097-CR, 2011 WL 908275 (Tex. App.—Texarkana Feb. 16, 2011, no pet.) (mem. op., not designated for publication).

2

what a family looked like." Apparently, this did not provide a precisely reasonable ring to Darryl, who called the police to report the encounter.

In another incident, Darryl woke up to the sound of his dog barking "quite veraciously [sic]." Upon going to investigate the cause of the canine ruckus, Darryl discovered Lemons in a "pickup sitting in the driveway at our neighbor's house," which was adjacent to the Cox home and which was then vacant. Upon being spotted by Darryl, Lemons "peeled out and went through the ditch[.]" Darryl attempted to trail him in his own truck, also calling 9-1-1 to "follow[] . . . the chase[,]" but Lemons' truck sped off, and he was able to escape.

Sometime after the high-speed chase, Darryl encountered Lemons as Darryl was entering and Lemons was leaving a pizza restaurant. Darryl then indicated that it was unacceptable to him to repeatedly discover Lemons peering through the windows of the Cox home, but said that he would forgive Lemons on Lemons' promise that he would cease doing so. Lemons refused to give that assurance.

Thereafter, Darryl would see Lemons "drive by the house on a four-wheeler" on "multiple occasions." Darryl then saw Lemons in his truck near Darryl's work place and shortly thereafter received a telephone call wherein a voice which Darryl identified as being Lemons' said, "You haven't won yet" and then the call was abruptly terminated.

On more than one occasion, Darryl observed Lemons following him when Darryl was going to work, and Darryl sometimes took evasive actions to shake him from following.

On the final occasion, on the morning of September 7, 2008, Darryl once again awoke to the sound of his dog's violent barking. He "grabbed [his] 9mm and headed out the front door."

3

Darryl saw "someone staring in the back window." Carrying his gun and a flashlight outside, Darryl decided to confront the intruder by telling him to "step back away from the house." Darryl testified that Lemons emerged from the shadows and came toward him. Although Darryl instructed Lemons to get on the ground and wait while Karen called the police, Lemons instead used his own weapon to shoot Darryl underneath his right rib cage, whereupon Lemons ran away.

Jeremy Allen Case, emergency dispatcher for the Hunt County Sheriff's Department, received a 9-1-1 call from Karen stating that her husband had been shot. Karen told Case that Darryl identified the shooter as Lemons. Darryl was transported by ambulance to the hospital, where he underwent emergency surgery. After Darryl was airlifted to Baylor Hospital, Karen and the Coxes' son, Curtis, drove to the hospital together, but stopped by Lemons' trailer on the way. Karen went inside the trailer as Curtis waited in the vehicle.

Darryl identified Lemons from a photographic lineup as the person who had shot him. An investigation by law enforcement officials led to the discovery that Karen had sent Lemons a text message warning him, "They're coming for you. You need to run," and she was jailed for obstruction of justice. Law enforcement representatives revealed to Darryl that Karen had been carrying on an illicit affair with Lemons for about eighteen months before the shooting occurred.

## II.    Standard of Review

We begin our analysis with recognition of the rule that any allegation of ineffectiveness of counsel must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v.*

4

*State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). The record received by this Court is silent as to trial counsel's reasoning (or want of reasoning) in having not objected to extraneous evidence, in having elicited such evidence, or in not requesting an instruction to disregard such evidence at the time it was heard by the jury. It is Lemons' burden to prove by a preponderance of the evidence from that record that he received ineffective assistance of counsel. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing an evaluation of the merits of the claim involving ineffective assistance claims. *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id.* at 813–14.

We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Lemons received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984); *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

First, Lemons must show that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *Id*. at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id*. at 689;

5

*Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess the strategy of Lemons' counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

The second *Strickland* prejudice prong requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009).

## III. Lemons Cannot Meet the *Strickland* Test

At trial, Karen took the stand, admitted her extramarital affair to the jury, and told them that she knew that Lemons had shot Darryl.[2] She further testified on direct examination as follows:

> Q    Did the defendant ever tell you or offer to harm your husband?
>
> A    Yes.
>
> Q    Okay. What did he -- how did he offer to harm your husband and when?
>
> A    When he wanted me to leave my husband and I told him I couldn't, he had mentioned cutting the brakes on the truck that my husband drove. My

---

[2]In the first trial, Darryl was the only witness that Lemons was the perpetrator of the attempted murder, and we characterized the first trial as being a "swearing match" between Darryl (who had initially identified another person as his assailant) and Lemons.

6

response was, But you don't know if I'm going to drive that or if Curtis is going to drive that, you cannot do that.

. . . .

    Q      What's the other occasion that he referred to harming your husband?

    A      He asked me if I could give him extra medication.

Later, the following exchange occurred:

    Q      Let's go to the morning of September -- well, actually, before we get to the morning your husband was shot, what did you do that Friday?

    A      I accompanied [Lemons] to a hearing that he had in Rains County.

. . . .

    Q      Okay. And did anything happen that day in court?

    A      Dawn Wright dropped the stalking charges that she had against [Lemons] for the September to December of 2007 time frame of him stalking her.

Lemons argues that his trial counsel was ineffective in having failed to object to this testimony.

"Extraneous offenses are inherently prejudicial, and when counsel fails to object to numerous extraneous and prejudicial matters, counsel may be ineffective." *Haagensen v. State*, 346 S.W.3d 758, 766 (Tex. App.—Texarkana 2011, no pet.). "The accused may not be tried for a collateral crime or for being a criminal generally." *Id.* (quoting *Jackson v. State*, 320 S.W.3d 873, 882 (Tex. App.—Texarkana 2010, pet. ref'd)). However, "[w]hen an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible." *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002); *Hall*, 161 S.W.3d at 154.

7

"Rule 404(b) sets out an illustrative, not exhaustive, list of exceptions to the prohibition against admitting evidence of extraneous offenses including 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Heigelmann v. State*, 362 S.W.3d 763, 768 (Tex. App.—Texarkana 2012, pet. ref'd) (quoting *Daggett v. State*, 187 S.W.3d 444, 451 n.13 (Tex. Crim. App. 2005) (citing TEX. R. EVID. 404(b))). Here, it was undisputed that Darryl had been shot by someone. Lemons was not the only suspect, the jury being told that the names of James Downs (the owner of the truck driven by Lemons) and James Rodriguez[3] (Karen's previous boyfriend) had also arisen during the investigation. Lemons had also tried to enlist the aid of others to construct an alibi suggesting that he was at his parents' home at the time of the shooting.[4] Thus, because the primary question for the jury to answer was whether Lemons was the shooter, identity was an issue in this case. After determining the identity of the shooter, the jury was also asked to make a finding as to whether the act of the shooting was intentional. Here, evidence of Lemons' threats towards Darryl could have been admitted to show proof of identity, motive, and intent. *See Butler v. State*, 645 S.W.2d 820, 823 (Tex. Crim. App. 1983); *Sewell v. State*, 629 S.W.2d 42, 46 (Tex. Crim. App. [Panel Op.] 1982). Lemons cannot demonstrate that the trial court would have erred in overruling an objection if counsel had objected to evidence relating to those elements necessary to prove the case. *See Haagensen*, 346 S.W.3d at 766; *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996)

---

[3]Lemons testified in the previous trial of this case, pointing an accusing finger at Rodriguez. *Lemons*, 2011 WL 908275, at *1.

[4]Lemons' brother testified that Lemons had instructed him to lie to police officers in providing a false alibi that Lemons was at his parents' home on the day of the shooting.

(per curiam). Therefore, Lemons cannot show that counsel was ineffective in having failed to object to the evidence regarding his prior threats toward Darryl.

Next, Karen's testimony also established that another woman dropped stalking charges which had been filed against Lemons. Counsel's reasons for failing to object to this testimony do not appear in the record. "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Haagensen*, 346 S.W.3d at 766 (quoting *Ortiz*, 93 S.W.3d at 88–89). As we noted in *Haagensen*, counsel may have decided not to emphasize the evidence by raising an objection on the theory that once a bell has been rung, it cannot be unrung and that the more a jury hears of a matter, the more importance they may attach to it. He may have also decided not to object in "an effort to build rapport with the jury and prevent the jury from concluding he was attempting to hide information from them." *Id.* "Because trial counsel's failure to object may have been based on trial strategy, we are unable to conclude counsel's actions fell outside the wide range of reasonable professional assistance." *Id.*

Lemons complains that his own trial counsel elicited extraneous-offense testimony in the following excerpts of Karen's cross-examination:

> Q    Okay. And . . . you [and Lemons] had little arguments off and on?
>
> A    Yes.
>
> Q    What would you normally argue about?
>
> A    Trivial stuff, money.

9

Q      Okay.

A      And him wasting it.

Q      All right.  Now, he's never harmed you at all, has he?

A      In September he had grabbed me and was very aggressive.

. . . .

Q      . . . . Now, he grabbed your arm, is that what you said?

A      Yes.

Q      Okay.  Now, you never filed any charges or anything?

A      No.

Q      Okay.  But he's never hit you or beat you or anything like that?

A      He has run me off the road several times.

Eliciting testimony about prior crimes is not per se ineffective assistance of counsel. *See*

*Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010) (court "hesitant to 'designate

any error as per se ineffective assistance of counsel as a matter of law'").  However, when "no

reasonable trial strategy could justify the trial counsel's conduct, the counsel's performance falls

below an objective standard of reasonableness as a matter of law." *Id.*  In this case (which does

not contain counsel's reasons for having asked whether Lemons had ever harmed Karen), it is

quite possible that counsel expected a negative answer to his question based on conversations

with his client.  Further, questions regarding the matter could have been an attempt, albeit unwise

in hindsight, to lessen the effect of Karen's response that Lemons had grabbed her arm and acted

aggressively toward her. We note that "the constitution entitles a criminal defendant to a fair

10

trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). The constitutional right to counsel does not mean that Lemons' counsel was required to be errorless. *Alberts v. State*, 302 S.W.3d 495, 507 (Tex. App.—Texarkana 2009, no pet.) (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). Even if we assumed this line of questioning to be an isolated failure, it does not necessarily constitute ineffective assistance of counsel. *Id.*

With respect to Karen's cross-examination, Lemons cannot meet the second *Strickland* prong, which requires a showing that but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88. Here, Darryl testified to the strange, strained, and uncomfortable encounters with Lemons which occurred prior to the shooting. Darryl specifically identified Lemons as the shooter in a photographic lineup and in court. The 9-1-1 emergency call placed by Karen also indicated that the shooter was identified by Darryl at the time of the shooting. Karen admitted to having had an affair with Lemons and to having tried to warn him to run when the investigation centered upon him. She also admitted to the jury at this trial that she knew that Lemons was the person who had shot Darryl. Lemons' own brother testified that Lemons had asked him to lie to the police to assist in the formulation of a plausible alibi. There was ample evidence admitted at trial to support the jury's verdict. Given the evidence presented, Lemons cannot show that the result of the proceeding would have been different had information regarding Lemons' aggressive behavior toward Karen not been admitted, and we cannot conclude that Lemons was deprived of a fair trial.

Finally, Lemons complains that his trial counsel was ineffective in having failed to request an extraneous-offense limiting instruction at the times during the trial that evidence of the bad acts was presented.[5] However, the jury charge contained the following instruction:

> Evidence may have been introduced in this case regarding the defendant having committed other crimes, wrongs, or acts. You are instructed that you can not [sic] consider any such evidence to prove the character of the defendant or that he acted in conformity therewith.
> You can consider any such evidence for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any were committed.

We generally presume that the jury followed the trial court's instructions unless there is indication to the contrary. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *see Higginbotham v. State*, 356 S.W.3d 584, 593 (Tex. App.—Texarkana 2011, pet. ref'd). Thus, Lemons cannot demonstrate that, but for counsel's failure to ask for a limiting instruction at the time extraneous-offense evidence was introduced, there is a reasonable probability that the result of the proceeding would have been different.

We overrule Lemons' complaints regarding ineffective assistance of counsel.

---

[5]A defendant is entitled to an instruction limiting the jury's use of an extraneous offense not only in the jury charge but also at the time the evidence is admitted if such an instruction is timely requested by the accused. *Pedersen v. State*, 237 S.W.3d 882, 887 (Tex. App.—Texarkana, 2007, pet. ref'd). The failure to give such an instruction at the time the evidence is admitted is error when such an instruction has been requested. *Id.*

## IV.  Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     March 26, 2013
Date Decided:       April 4, 2013

Publish