# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00761-CR

**Jose Rigoberto Matute, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
## NO. D-1-DC-12-205310, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jose Rigoberto Matute of the offense of aggravated robbery and assessed punishment at 40 years' imprisonment. The district court rendered judgment on the verdict. In a single point of error on appeal, Matute asserts that trial counsel was ineffective in (1) failing to object to the admission of extraneous-offense evidence and (2) failing to object to a comment made by the district court during jury selection. We will affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on the night of September 12, 2012, a convenience store located on East Ben White Boulevard in South Austin was robbed. Michelle Duvall, the clerk working at the store during the robbery, testified that the robbery was committed by two men

wearing bandanas that covered the lower half of their faces, one of whom was armed with a gun.[1] According to Duvall, the armed robber came behind the counter, held the gun to her body, and told her to give him the money from the cash register, which she did. After the robbers took the cash and left the store, Duvall recounted, she hit a "panic button" behind the counter, notifying the police of the robbery.

Later that same night, officers with the Sunset Valley Police Department conducted a traffic stop on a green Toyota Camry for making what was perceived to be an improper wide turn. Officer Tyler Early of the Sunset Valley Police Department testified that there were four individuals inside the vehicle: the driver, identified as Matute; a female passenger in the front seat, identified as Maria Piseno; and two male passengers in the back seat, identified as Christian Solis and Fidencio Garcia. Early testified that upon making contact with Matute, he noticed an odor of marihuana inside the vehicle and proceeded to search it. During the search, Early found a twelve-gauge shotgun in the trunk. Officer J.C. Hall, the other officer who had conducted the stop, described the gun as having a "short fore grip" and a long barrel, which Hall characterized as a "fairly unique feature of that particular weapon." Hall also testified that he found clothing inside the trunk, including a "white button-up dress shirt" and a "sports-type jersey" with a number on the back of it. The occupants of the vehicle were also searched during the stop. According to Early, the search of Piseno revealed that she had a "very thick wad of cash and lots of bills" on her person. But then being unaware of the robbery, the officers issued Matute a traffic citation and released him and his companions.

---

[1] Although Duvall did not describe the gun during her testimony, a security camera in the store recorded the robbery, and still photos from the recording were admitted into evidence. In several of the photos, the gun is visible and appears to be a long-barreled shotgun.

The following month, Officer Hall came across a "Be On the Lookout" report (also known as a "BOLO") that contained still photographs of the surveillance footage from the robbery, including an image of the armed robber holding the firearm. Hall testified that the firearm caught his attention because "it's a very unique shotgun" and "very odd." According to Hall, "[i]t appeared to be similar to the one . . . that we had encountered recently in that traffic stop." Hall added that "[t]he other thing that caught my attention was the clothing that was in the back of the vehicle seemed to match or coincide with what it showed the suspects were wearing." Hall proceeded to review the video of the traffic stop and observed that "some of the people that we had interacted [with] on the traffic stop had similar descriptors and sort of matching features as the people that were listed in this BOLO." Hall then contacted the Austin Police Department and relayed this information to the officers who were investigating the robbery.

Officers subsequently located Matute's vehicle at a motel in South Austin, conducted a stakeout at that location until Matute was seen leaving the motel and getting into the vehicle, and then followed Matute to a convenience store, where they arrested him. Following his arrest, Matute was interviewed by police detectives and provided statements that tended to implicate him in the robbery. A video recording of the interview, which we discuss in more detail below, was admitted into evidence. Also admitted into evidence were photographs of several items that were found in Matute's motel room following his arrest, including: a twelve-gauge shotgun that matched the description of the firearm used in the robbery; a shotgun shell; a dark blue bandana; various articles of clothing, including a sports jersey with the same number as the jersey worn by one of the robbers during the robbery; and a photo identification card belonging to Matute.

3

After considering this and other evidence, the jury found Matute guilty of aggravated robbery and assessed punishment as noted above. The district court rendered judgment on the verdict. This appeal followed.

**ANALYSIS**

In his sole point of error on appeal, Matute complains of ineffective assistance of trial counsel in the proceedings below. "Ineffective-assistance-of-counsel claims are governed by the familiar *Strickland* framework: To prevail, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense."[2] "An attorney's performance is deficient if it is not within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms, and courts indulge in a strong presumption that counsel's conduct was not deficient."[3] "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'"[4] In other words, in the absence of a record explaining the reasons for counsel's decisions, we will not find counsel's performance deficient if any reasonably sound strategic motivation can be imagined.[5]

*Strickland* establishes a similarly high bar for establishing prejudice: "A defendant suffers prejudice if there is a reasonable probability that, absent the deficient performance, the

---

[2] *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[3] *Id*. (citing *Strickland*, 466 U.S. at 689).

[4] *Id*. at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

[5] *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

4

outcome [of the proceeding] would have been different."**[6]** "A reasonable probability is a probability sufficient to undermine confidence in the outcome."**[7]** "It will not suffice for Appellant to show 'that the errors had some conceivable effect on the outcome of the proceeding.'"**[8]** "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"**[9]**

"It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim."**[10]** As a result, "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."**[11]**

**Extraneous-offense evidence**

Matute first asserts that trial counsel was ineffective in failing to object to the admission of extraneous-offense evidence. In a video recording of Matute's interview with police detectives following his arrest that was played for the jury, the detectives can be heard referring to

---

**[6]** *Nava*, 415 S.W.3d at 308 (citing *Strickland*, 466 U.S. at 694).

**[7]** *Id*.

**[8]** *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693).

**[9]** *Id*. (quoting *Strickland*, 466 U.S. at 695).

**[10]** *Nava*, 415 S.W.3d at 308 (citing *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

**[11]** *Lopez*, 343 S.W.3d at 143 (citing *Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004); *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)).

other robberies that they believed Matute had committed. After the detectives had made several references to these other robberies, the parties approached the bench and the following occurred:

| | |
|---|---|
| [Defense counsel]: | I'm just confused. Because this particular robbery that we are talking about occurred on Ben White and 71, and he's talking about now a robbery that happened in Oak Hill. |
| [Prosecutor]: | I think it's the same one. Do you want to break where we are? |
| [Defense counsel]: | I mean, is he just confused? |
| [Prosecutor]: | I think the detective is confused. He starts intermixing directions, but if we want to take a five-minute break we can make sure before we go forward. |

. . .

(Open court, defendant present, no jury)

| | |
|---|---|
| [The court]: | [Defense counsel], do you want to take this witness on voir dire? |
| [Defense counsel]: | Yes, Your Honor, if I could. |
| | Detective Leleux, with regard to the robbery that you are referring to, I'm a little confused because the robbery that we're in trial here we're talking about is the one that happened on East Ben White Boulevard. Now, I know that there were some others that you were investigating so I want to just see if we can maybe get straight where we are in case we need to fix something before we go forward. Okay? |
| . . . | |
| | All right. Now, the robbery that we are talking about right now is 2250 East Ben White Boulevard, 78741? |
| [Leleux]: | Yes. |
| [Defense counsel]: | Are you mistaken and that's what you mean when you are talking about the robbery, or are you talking about a different one altogether? |

[Leleux]:            So in—I printed out Google Maps like especially street views of the different stores and used those and went—used those and showed them to the defendant to reference and indicate to him which one we were talking about. So I would have been showing him a map and discussing one that happened west, in southwest Austin, close to the Y, and not the East Ben White one.

[Defense counsel]:   Okay. So you are not talking about the East Ben White one?

[Leleux]:            Correct.

[Defense counsel]:   At any point in the rest of your interview do you talk about the East Ben White one? Do you recall?

[Leleux]:            We discussed all of them.

[Defense counsel]:   All of them. Okay.

. . .

I think, Your Honor, that he is talking about a separate robbery that's—and it's clear to me, right, we're talking about a different robbery altogether.

I would ask by way of just curing it, I think and just by looking at the charge earlier today which you have in here is probably sufficient with regard to the extraneous acts or whatever, but with regard to curing it and being able to go forward now, if we could just skip past the part where he talks about it. If I'm not mistaken, there is nothing else other than the one part where he takes out the map and looks at it the one time.

. . .

And I think that we could probably just go forward. If we just forward [the video] just a little bit, probably we'll be okay.

After the recording had been forwarded to a later point during the interview as requested by trial counsel, the remainder of the interview was then played for the jury. However, the remainder

7

of the recording contained additional references to the other robberies, and counsel did not object to them.[12]

According to Matute, "[i]t is beyond question that trial counsel should have ensured that references to extraneous robberies would not be permitted to go before the jury." In Matute's view, "[t]here can be no reasonable trial strategy that would explain why such prejudicial material was permitted to be heard by the jury."

However, "[i]f counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."[13] It is well settled that the decision to refrain from objecting to extraneous-offense evidence can be a legitimate trial strategy, for reasons ranging from not wanting to draw the jury's attention to the evidence to not wanting the jurors to believe that the defendant is trying to hide information from them.[14] In this case, we also observe that trial counsel, during his cross-examination of Leleux, appeared to pursue a strategy of establishing that Matute was cooperating fully with the detectives and not acting "rude" or "difficult" during the entirety of the interview. Trial counsel could have reasonably believed that

---

[12] The following day, the State offered and the district court admitted into evidence a redacted version of the interview, which removed some but not all of the references to the other robberies. The district court ruled that the redacted version would be available for the jury's review during deliberations but that the original version would remain in the record "because the jury heard that one."

[13] *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002); *Haagensen v. State*, 346 S.W.3d 758, 766 (Tex. App.—Texarkana 2011, no pet.).

[14] *See, e.g.*, *Lemons v. State*, 426 S.W.3d 267, 273 (Tex. App.—Texarkana 2013, pet. ref'd); *Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Haagensen*, 346 S.W.3d at 766; *Heiman v. State*, 923 S.W.2d 622, 626 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *Ahmadi v. State*, 864 S.W.2d 776, 783 (Tex. App.—Fort Worth 1993, no pet.).

redacting certain portions of the interview might have worked against such a strategy of making the jury fully aware of his client's good behavior during the interview. Because trial counsel's decision to not object might have been based on sound trial strategy, we cannot conclude that counsel's performance fell outside "the wide range of reasonable professional assistance."[15]

Moreover, even if counsel's failure to object was deficient, we could not conclude on this record that Matute was prejudiced by any such failure. As the State observes in its brief, most of the references to the other robberies were brief and ambiguous, with the detectives using terms such as "doing these things," "hitting licks," and using the plural form of words such as "stores." In fact, due to the ambiguous nature of these references, the record reflects that both the prosecutor and trial counsel were confused as to whether the detectives were referring to other robberies until trial counsel clarified the issue during voir dire. The jury did not hear this clarification, so the jury might have been similarly confused. But even if the jury was aware that Matute was being investigated for multiple robberies, we cannot conclude that there is a reasonable probability that, absent such awareness, the outcome of the proceeding would have been different. This was not a close case. During his interview with the police, Matute made statements implicating himself in the charged robbery, including stating, "I think I robbed it" when asked what happened at the store; admitting that his "big mistake" was "stealing" and that it was "wrong" for him to do so; explaining to the detectives how he had committed the crime, which was consistent with the clerk's testimony of what had occurred during the robbery; and expressing remorse for what he had done, both to the detectives during the interview, and in a subsequent telephone conversation with his mother that was also recorded and played for the jury. Additionally, there was physical evidence

---

[15] *Strickland*, 466 U.S. at 689.

linking Matute to the robbery, including the shotgun, clothing, bandana, and other items that were found in Matute's motel room following his arrest. Moreover, a similar shotgun was seen in Matute's vehicle on the night of the robbery, and one of Matute's companions had a "very thick wad of cash and lots of bills" on her person when the vehicle was searched. On this record, we cannot conclude that Matute satisfied his burden to show that there is a reasonable probability that Matute was prejudiced by trial counsel's failure to object to the references to other robberies in the recording.[16]

**District court's comment during jury selection**

Matute also asserts that trial counsel was ineffective in failing to object to the following comment made by the district court during jury selection in response to a potential juror's question regarding how the jury was to assess punishment:

> [I]n the State system, Texas is unusual in that the jury is even assessing punishment; however, I would say that the standard is the community standard. Judges many times look to the community and what juries do on cases as well, what they think a case is worth. You would look at all the facts but there is not a matrix.

According to Matute, it was improper for the district court to reference a "community standard," and trial counsel should have objected to that reference.[17]

---

[16] *See Ex parte Martinez*, 330 S.W.3d 891, 904 (Tex. Crim. App. 2011) (holding that record demonstrating "ample evidence to support a reasonable jury's finding of guilt" militates against finding that defendant was prejudiced by trial counsel's failure to object to inadmissible evidence).

[17] *See Cortez v. State*, 683 S.W.2d 419, 420 (Tex. Crim. App. 1984) (holding that "an accused person is entitled to have his guilt or punishment determined without reference to any outside influence," including what the community might think or believe regarding defendant's guilt or punishment).

10

To successfully assert that trial counsel's failure to object amounted to ineffective assistance, Matute must show the trial court would have committed error in overruling the objection.[18] Matute has failed to make that showing here. "Mere reference to 'the community' does not constitute an improper appeal to community expectations."[19] A judicial comment or prosecutorial argument referring to the community is improper only when "the effect of the language used [is] to ask the jury to convict or punish the defendant upon public sentiment or desire rather than upon the evidence that the jury had received."[20] Here, the district court used no such improper language. To the contrary, the district court informed the jury that "there is not a matrix" for assessing punishment and that the jury was to "look at all the facts" in reaching its decision, which is what the jury is supposed to do when assessing punishment. Thus, the district court would not have erred in overruling an objection to its comment and, therefore, we cannot conclude that trial counsel was deficient in failing to object to it.[21]

Moreover, even if trial counsel's failure to object constituted deficient performance, we could not conclude on this record that Matute was prejudiced by any such failure. The district court's reference to a "community standard" was limited to that one occurrence and was not subsequently repeated by either the district court or the parties during jury selection. Nor did the parties refer to "community standards" in their closing arguments during punishment, instead

---

[18]  *See Martinez*, 330 S.W.3d at 901.

[19]  *Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd).

[20]  *Cortez*, 683 S.W.2d at 421.

[21]  *See Ex parte Parra*, 420 S.W.3d 821, 825-26 (Tex. Crim. App. 2013) (considering surrounding context in which judicial comment was made and concluding that it was proper and that counsel was not deficient in declining to object to it).

focusing on the evidence presented and the facts of the case. And there is no indication in the record that the jury assessed punishment based on any sort of "community standard." On this record, we cannot conclude that there is a reasonable probability that, but for counsel's failure to object to the district court's comment, the outcome of the proceeding would have been different.

We overrule Matute's sole point of error.

## CONCLUSION

We affirm the judgment of conviction.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   January 6, 2016

Do Not Publish

12