

# NUMBER 13-16-00252-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **VICTOR CANALES A/K/A HERBERTO RIVERA-SALAZAR,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 148th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Hinojosa
### Memorandum Opinion by Justice Hinojosa

Appellant Victor Canales, a/k/a Herberto Rivera Salazar, appeals his conviction for indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West, Westlaw through 2017 1st C.S.). A jury found appellant guilty, and the trial court assessed punishment of twenty years' imprisonment in the Texas

Department of Criminal Justice–Institutional Division.   By one issue, appellant argues his trial counsel was ineffective in failing to object to (1) the complainant's medical records and (2) extraneous-offense evidence.   We affirm.

## I.   BACKGROUND

Appellant was charged by indictment with continuous sexual abuse of a child by committing two or more acts of sexual abuse against his eleven-year-old step-daughter S.L.[1]   *See id.* § 21.02 (West, Westlaw through 2017 1st C.S.).   More specifically, the indictment alleged that, during a period spanning thirty or more days, appellant committed two counts of aggravated sexual assault of a child, *see id.* § 22.021 (West, Westlaw through 2017 1st C.S.), and indecency with a child by contact.   *See id.* § 21.11(a)(1).

During his opening statement, appellant's trial counsel explained that appellant was an "illegal alien."   He maintained that the evidence would demonstrate that S.L. fabricated the allegations so that appellant would be deported.   Finally, appellant's counsel alluded to mental health problems S.L. was experiencing prior to her outcry of sexual abuse.

S.L. testified that she previously resided with her mother, appellant, and her three brothers in Corpus Christi, Texas.   S.L. described multiple instances of sexual abuse allegedly perpetrated by appellant beginning when she was eleven years old.   On the first occasion, appellant and S.L. were "wrestling" in her room when he grabbed S.L, pulled down her pants and underwear, and placed his tongue in S.L.'s "middle."   Appellant asked S.L. not to tell her mother because she would kick him out of the house.

---

[1] We will refer to the minor complainant and her family members by their initials to protect the complainant's privacy.

S.L. did not initially tell anyone about the incident.

S.L. recalled on another occasion that she awoke in bed to discover appellant's hand inside her underwear. S.L. explained that appellant was touching her "middle" area with his finger and he was "rubbing inside of it." Appellant removed his hand when he discovered that S.L. was awake, and S.L. left the room. S.L. did not tell anyone because she was afraid of "ruining things with him and [her] mom."

S.L. also explained that she and appellant would often wrestle while listening to music. On these occasions appellant "would put me down on the ground like he would be on top of me moving up and down." S.L. described appellant's movements as "humping," and she stated that she could feel appellant moving "[h]is middle area into mine." S.L. estimated that this occurred multiple times over the course of a year.

S.L. recalled several occasions when appellant would try to put his "middle" in her mouth. She explained that appellant would grab her head and "just put it against his middle." According to S.L., appellant also frequently tried to put his tongue in her mouth when kissing her. On another occasion, appellant exposed his "middle" to S.L. The last instance of alleged abuse occurred when appellant woke S.L. up and told her to "make love" to him. S.L. explained that appellant placed her on top of him and that appellant's "middle" was "hard."

Using a diagram of the female body, S.L. demonstrated that appellant had touched her vagina, buttocks, and chest area. With the aid of a separate diagram of the male body, S.L. indicated that appellant touched her vagina with his finger and his mouth.

S.L. testified that she later told family members, including her aunt, about

3

appellant's actions. Her aunt then contacted law enforcement. On the advice of a police officer, S.L.'s grandmother took S.L to Driscoll Children's Hospital (Driscoll) in Corpus Christi for a sexual assault examination. Following her outcry of sexual abuse, S.L. spent time in multiple residential placements, and she was eventually admitted to Bayview Behavioral Hospital (Bayview) after demonstrating suicidal tendencies. When asked if she was hospitalized because of appellant's abuse, S.L. replied, "Kind of, because I started to hurt myself more." S.L. stated she also spent time at Bayview prior to disclosing appellant's sexual abuse. S.L. has lived with her grandmother since her release from Bayview.

V.H., S.L.'s aunt, testified that she had approached S.L. at a family gathering because it looked like something was bothering her. S.L. told V.H. that appellant was touching her "private part." V.H. took S.L. from the gathering and made contact with law enforcement.

Elena Estrada, a forensic child abuse nurse examiner at Driscoll, conducted a sexual assault examination. Through Estrada's testimony, the State introduced medical forensic examination records, which the trial court admitted without objection. Estrada read to the jury the history provided by S.L. during that examination. Estrada stated that she conducted a physical examination of S.L. but found no physical trauma. She explained that this occurs with eighty-five to ninety percent of sexual assault victims due to delayed reporting of the abuse.

Cindy Croston, the records custodian for Bayview, sponsored the admission of S.L.'s Bayview hospital records. The trial court admitted the records without objection.

The records were accompanied by a business records affidavit.

Tracy Bru, a licensed professional counselor, testified that she provided counseling services to S.L. Bru explained that delayed and incremental outcries are extremely common in child sexual abuse cases.

Appellant testified that he was born in Mexico and came to the United States in 1998 or 1999. Appellant met S.L.'s mother in 2003, when S.L. was a baby. They married in 2005. Appellant has supported the family financially since that time. Appellant stated that he initially came to the United States legally, but that he was later arrested and deported. According to appellant, he has been arrested and deported to Mexico on multiple occasions, but he returned to the United States each time.

Appellant believed S.L. fabricated the allegations of sexual abuse because he confronted her for receiving nude photos of an older man on her phone. This occurred approximately fifteen days prior to S.L.'s outcry of sexual abuse. Appellant denied ever touching S.L. inappropriately.

During the State's cross-examination, appellant testified that he was arrested in 2005 for drug possession. The State later elicited the following testimony from appellant:

Q. And that was—the possession of marijuana was a third-degree felony, correct?

A. Yes.

Q. Isn't that between 5 and 50 pounds of marijuana?

A. Yes.

Q. How much marijuana did you have?

A. Like, I think it was 20 pounds.

5

Q. Were you selling it?

A. No, I was not selling it.

Q. Were you transporting it for somebody?

A. Yes.

Q. Did those drugs come from Mexico?

A. No.

The State also asked clarifying questions concerning the dates of appellant's deportations and reentries.

Following a recess, the trial court asked the attorneys to approach the bench, and the following exchange took place:

| | |
|---|---|
| Court: | I don't know if the law has changed, but you— has the law changed that you cannot go into the details of a conviction? |
| Appellant's Counsel: | It hasn't changed. |
| Court: | Then how come you did not object. |
| Appellant's Counsel: | He wanted to tell the truth. |
| Court: | Okay. But he can tell—you can ask if he's been convicted of a felony for possession of marijuana, but you cannot go into the details. That could cause unfair prejudice to the jury. I don't know what this caused or if this caused any unfair prejudice to the jury, but do you see the problem you just created for the Court because you went into the details of the possession of marijuana by saying 20 pounds, implying that he's a dealer now. They didn't know anything about the 20 pounds. They didn't have to know anything about the 20 pounds. All they needed to know that he was |

6

| | |
|---|---|
| | convicted of felony possession of marijuana. That's all they're entitled to know. |
| Prosecutor: | I apologize, Your Honor. I was not familiar with that area of the law. |
| Appellant's Counsel: | I was, Your Honor, but— |
| Court: | Well, you should have objected then because that is not part of the—that's showing prejudice to the Court and I could find you ineffective. Now, I don't—that's something—there's no reason for that to be in front of the Court—I mean, in front of that jury. There was no reason for that to be in front of the jury. |
| Appellant's Counsel: | I understand that. |
| Court: | So I just want to make sure that— |
| Prosecutor: | I will not talk about that anymore, Your Honor. |
| Court: | I appreciate that. |
| Prosecutor: | Your Honor, I would agree to even strike that portion from the testimony and an instruction to disregard. |
| Court: | Well, we can try that if you want to, that would be up to the defense to make that motion, you know, and I'll let the defense think about whether they want to do that or not, or whether the defense wants to do that. Sometimes that just calls attention— |
| Appellant's Counsel: | That's what I was thinking. |
| Prosecutor: | That's true. |
| Court: | —to the—you know, but at the same time, too, it's kind of hard to unremember something that they've heard. So, anyway, I just wanted to throw it out there for you. And so, you all can do with that what you will come trial. |

7

No subsequent reference to appellant's marijuana conviction appears in the record.

During closing argument, appellant's counsel emphasized that S.L. wanted appellant out of her life, possibly because of the confrontation over her use of the phone. He reminded the jury that S.L. has been to Bayview on two occasions, including prior to her outcry of sexual abuse.

The jury received instructions on continuous sexual abuse of a child and the lesser-included offenses of aggravated sexual assault of a child and indecency with a child by contact. After deliberating, the jury returned a guilty verdict for the offense of indecency with a child by contact. Following a punishment hearing, the trial court sentenced appellant to twenty years' imprisonment. This appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

To prevail on an ineffective assistance claim, appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Lopez*, 343 S.W.3d at 142. To satisfy the first prong, appellant must prove by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

8

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142; *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly rooted in the record[.]"). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When direct evidence is unavailable, we will assume counsel had a strategy "if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. We must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Id.*

"When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible." *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002). Trial counsel is not ineffective in failing to assert frivolous arguments and objections. *Brennan v. State*, 334 S.W.3d 64, 74 (Tex. App.—Dallas 2009, no pet.). Furthermore, isolated instances in the record reflecting errors of omission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Robertson v. State*,

9

187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

Although an appellant may claim ineffective assistance of counsel for the first time on direct appeal, the record in such a case often will be insufficient to overcome the presumption that counsel's conduct was reasonable and professional. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008); *Washington v. State*, 417 S.W.3d 713, 724 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Where, as here, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Under this procedural posture, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Washington*, 417 S.W.3d at 724.

## III. DISCUSSION

### A. Medical Records

#### 1. Hearsay

Appellant first argues that his trial counsel was ineffective for failing to object to the admission of State's Exhibit 5, S.L.'s Bayview records[2] because S.L.'s allegations of sexual abuse contained within the exhibit constitute inadmissible hearsay. We note that appellant identifies no specific statement within the exhibit for which an objection should have been raised. Rather, appellant cites generally to the "858 pages" contained in the reporter's record without any pin-point citation. Therefore, we will first determine whether

---

[2] Appellant makes no complaint regarding his counsel's failure to object to State's Exhibit 4, the sexual assault examination records from Driscoll.

the trial court would have committed error in overruling a global objection to the records.

Hearsay is an out of court statement that a party offers to prove the truth of the matter asserted within the statement. Tᴇx. R. Eᴠɪᴅ. 801(d). Hearsay is generally inadmissible. *Id.* R. 802. However, Rule 803(6) of the Texas Rules of Evidence creates an exception to the hearsay rule for

> [a] record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted business activity;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and
>
> (E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

*Id.* R. 803(6). Here, the exhibit was accompanied by an affidavit prepared by the custodian of records for Bayview in compliance with Rule 902(10). *See id.* R. 902(10). Further, appellant has made no showing that the source of the information contained in the records or the circumstances of its preparation indicate a lack of trustworthiness. *See id.* R. 803(6)(E). Therefore, the exhibit was admissible under Rule 803(6). *See Castaneda v. State*, 28 S.W.3d 685, 694 (Tex. App.—Corpus Christi 2000, pet. ref'd) ("A sexual assault victim's emergency room medical records are admissible under rule 803(6) as an exception to the hearsay rule.").

11

However, any statements made by S.L. contained within the Bayview records must independently qualify for admission under a separate hearsay exception. *See Garcia v. State*, 126 S.W.3d 921, 926–27 (Tex. Crim. App. 2004). Pursuant to Rule 803(4), statements made for the purpose of medical diagnosis or treatment are admissible as an exception to the hearsay rule. TEX. R. EVID. 803(4). This exception applies to statements made for the purposes of mental health diagnosis or treatment. *Taylor v. State*, 268 S.W.3d 571, 587–88 (Tex. Crim. App. 2008). The record demonstrates that S.L. was admitted to Bayview for mental health treatment after showing suicidal tendencies. We generally observe that S.L.'s statements contained within the exhibit relate to her mental health treatment. Further, appellant has not identified any specific statement in the voluminous exhibit that would be inadmissible under Rule 803(4). *See Thompson*, 9 S.W.3d at 813 (explaining that appellant bears the burden of proving his counsel was ineffective). Appellant has failed to demonstrate that the Bayview records, or any statement contained therein, constitute inadmissible hearsay. *See Ortiz*, 93 S.W.3d at 93. Therefore, appellant's counsel was not ineffective in failing to object on that basis. *See Brennan*, 334 S.W.3d at 74.

**2.    Confrontation Clause**

Next, appellant argues that the introduction of the Bayview records violated his right to confront and cross-examine witnesses as guaranteed by the Sixth Amendment.[3]

---

[3] Appellant's Sixth Amendment argument is limited to entries recorded by nurses, doctors, and other mental health professionals. Appellant makes no Sixth Amendment argument concerning the statements of S.L., who testified at trial and was subject to cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (explaining that if the declarant is subject to cross-examination at trial, "the Confrontation Clause places no constraints at all on the use of [a declarant's] prior testimonial statements").

12

*See* U.S. CONST. amend. VI. Other than this conclusory statement, appellant offers no argument or authority supporting his contention. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We note, however, that the Sixth Amendment's confrontation protections are limited to statements which are testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Coronado v. State*, 351 S.W.3d 315, 323 (Tex. Crim. App. 2011). The United States Supreme Court has described the class of testimonial statements covered by the Confrontation Clause as follows:

> Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51–52 (internal quotation marks and citations omitted). Business records are generally not testimonial because they are created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). Likewise, medical records created for treatment purposes are not testimonial. *See id.* at 312 n.2 (noting that "medical reports created for treatment purposes . . . would not be testimonial under our decision today"); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (holding that medical records were non-testimonial); *see also Harding v. State*,

13

No. 13-14-00090-CR, 2015 WL 6687287, at *7 (Tex. App.—Corpus Christi Oct. 29, 2015, pet. ref'd) (mem. op., not designated for publication) (same). As noted above, the Bayview records relate to S.L.'s mental health treatment. Appellant has not identified any statement contained therein that would be considered testimonial in nature. Therefore, appellant has failed to demonstrate that his counsel was ineffective in failing to object on this basis. *See Brennan*, 334 S.W.3d at 74.

## B. Extraneous-Offense Evidence

Next, appellant argues that his trial counsel was ineffective in failing to object to the State's questions regarding extraneous offenses. Specifically, appellant argues that the State's questioning of appellant elicited inadmissible character evidence under Texas Rule of Evidence 404. *See* TEX. R. EVID. 404. The complained-of testimony relates to appellant's immigration status and a prior felony conviction. We will address each category of evidence separately.

### 1. Immigration Status

Appellant complains that the State was permitted to elicit details of appellant's immigration history, including that he was residing in the country illegally. However, appellant's status as an "illegal alien" was necessary to trial counsel's defensive theory that S.L. fabricated the allegations so that appellant would be deported. *See Alexander v. State*, 282 S.W.3d 701, 705–06 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("[T]rial counsel may have a sound trial strategy in not objecting to evidence that counsel feels is relevant to appellant's defense, or not harmful to appellant."). Appellant does not argue that his trial counsel was ineffective in pursuing this strategy. In furtherance of this

14

defense, trial counsel referenced appellant's immigration status in his opening statement and questioned appellant on this topic during his direct examination. Having done so, appellant opened the door to further examination by the State concerning this issue. *See Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997) (explaining that otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door" to the evidence). We are unable to conclude then that the trial court would have erred in overruling an objection to the State's clarifying questions. *See Ortiz*, 93 S.W.3d at 93. Therefore, appellant's counsel was not ineffective in failing to object to questions concerning appellant's immigration status. *See Brennan*, 334 S.W.3d at 74.

### 2.      Felony Conviction

Finally, appellant argues that his trial counsel was ineffective in failing to object to evidence of appellant's prior felony conviction for marijuana possession.

Under Rule 404, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." TEX. R. EVID. 404(a)(1). But "[e]vidence of a witness's character may be admitted under Rule[] 609." *Id.* R. 404(a)(4). A defendant who testifies places his credibility at issue and may be impeached like any other testifying witness. *Vasquez v. State*, 417 S.W.3d 728, 732 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Accordingly, when a defendant testifies, Rule 609 permits the introduction of a prior felony conviction to impeach the witness. *Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App— Houston [1st Dist.] 2008, no pet.) (citing TEX. R. EVID. 609). While the *fact* of a prior felony conviction may be introduced for impeachment purposes, the *details* of the

15

conviction are generally inadmissible. *Id.* (citing *Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986)).

Given appellant's decision to testify, the fact of his prior felony conviction was the subject of proper impeachment. However, the additional details elicited by the State were not admissible for that purpose. We need not speculate whether the trial court would have sustained an objection to such evidence. The trial court's statements on the record clearly demonstrate that it would have done so, and its ruling in that regard would have been a proper exercise of its discretion. *See Brennan*, 334 S.W.3d at 74.

Nevertheless, while the scope of appellant's cross-examination was subject to a valid objection, appellant has failed to rebut the presumption that counsel was acting according to sound trial strategy when he declined to raise any such objection. Before being condemned as unprofessional or incompetent, counsel is normally afforded an opportunity to explain his actions through a hearing on a motion for new trial or in a post-trial habeas proceeding. *See Bone*, 77 S.W.3d at 836. Without a proper evidentiary record, we will not conclude that counsel's performance was constitutionally deficient if any strategic motivations can be imagined for the challenged conduct. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In his brief exchange with the trial court, appellant's counsel noted that his client wanted to be forthright with the jury. *See Lemons v. State*, 426 S.W.3d 267, 273 (Tex. App.—Texarkana 2013, pet. ref'd) (concluding that counsel's decision not to object to extraneous-offense testimony could have been to "prevent the jury from concluding he was attempting to hide information from them" (internal quotations omitted)). Appellant's counsel also concurred with the

16

trial court's concern that an instruction to the jury to disregard the testimony would only draw further attention to the evidence. It is possible that appellant's counsel chose not to object in the first instance based on similar concerns. A desire to avoid drawing additional attention to unfavorable evidence is a reasonably sound strategic motivation. *See Ex parte Bryant*, 448 S.W.3d 29, 41 (Tex. Crim. App. 2014); *Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that counsel "may have . . . decided to withhold objections to avoid drawing unwanted attention to a particular issue, or to prevent the impression that she was objecting at every opportunity as a means of stonewalling evidence"). We are unable to conclude that counsel's conduct is so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392. Therefore, appellant has not defeated the strong presumption that his counsel's representation fell within the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814.

Even if we were to assume that counsel's isolated failure to object fell outside the wide range of reasonable professional assistance, *see Robertson*, 187 S.W.3d at 483 (explaining that "[i]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective"), appellant has not demonstrated that such failure prejudiced his defense. *See Strickland*, 466 U.S. at 689. The State placed no additional emphasis on the marijuana conviction for the remainder of the trial. Further, while we acknowledge the importance of appellant's credibility to his defensive theory, he has failed to show that the jury placed any significance on the *details* of his conviction—transporting twenty pounds of marijuana—when the fact of the

17

conviction and appellant's history of deportation and reentry were already before the jury. *See Cavitt v. State*, 507 S.W.3d 235, 259 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (concluding that defendant was not prejudiced by counsel's failure to object to details of a prior sexual assault conviction); *Leyba v. State,* 416 S.W.3d 563, 570 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (finding no harm resulting from the introduction of DUI conviction when the prosecution elicited testimony involving more recent and serious offenses); *Jabari*, 273 S.W.3d at 753 (concluding that the introduction of details of prior sexual assault convictions was harmless error); *see also Lynch v. State*, No. 08-15-00371-CR, 2018 WL 636265, at *6 (Tex. App.—El Paso Jan. 31, 2018, no pet.) (mem. op., not designated for publication) (concluding that appellant was not prejudiced by trial counsel's failure to object to felony possession conviction when evidence of more serious convictions was properly admitted by the trial court). On this record, we are unable to conclude that there is a reasonable probability that the jury would have reached a different conclusion had such evidence been excluded. *See Lopez*, 343 S.W.3d at 142.

**C.     Summary**

The failure to make a showing under either of the required prongs of *Strickland* defeats a claim for ineffective assistance of counsel. *See id.* We conclude that appellant has not met his burden to show ineffective assistance of counsel by a preponderance of the evidence. *See id.* We overrule appellant's sole issue.

### IV.     CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

18

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of May, 2018.